[No. D045285. Fourth Dist., Div. One. Aug. 31, 2005.]

CAROL L. McINDOE, as Cotrustee, etc., et al., Plaintiffs and Appellants, v. SHARON OLIVOS, Defendant and Respondent.

COUNSEL

Branton & Wilson and Shirley L. Kovar for Plaintiffs and Appellants.

Thor O. Emblem and Tracy L. Emblem for Defendant and Respondent.

OPINION

**McINTYRE, J.**—In this case we conclude that a proposed contest to the validity of amendments to a trust would not violate the no contest clause of an exempt portion of the trust.

## FACTUAL AND PROCEDURAL BACKGROUND

In 1981, Byron and Muriel Grimm created a living trust (the original trust), naming their children, Carol L. McIndoe and Sharon Olivos, each as a 40 percent beneficiary, with the remaining 20 percent split between the trustors' grandchildren. During their joint lifetime, the trustors could amend any terms of the original trust. Upon the death of a trustor, the original trust was to be divided into a survivor's trust that could be amended or revoked and an exempt trust that could not be amended or revoked. The survivor's trust included the surviving spouse's separate property, the surviving spouse's interest in the trustors' community property, and the minimum dollar amount necessary to eliminate any federal estate tax on the death of the first trustor. The exempt trust consisted of the balance of the estate. The original trust included a no contest clause specifying that if any beneficiary contested the trust, the individual would be disinherited.

Following Byron's death in 1988, Muriel amended the survivor's trust six times. As relevant to this appeal, the fifth amendment removed Sharon as a beneficiary to the survivor's trust and gave her 40 percent share of the survivor's trust to James McIndoe, Carol's husband. The sixth amendment removed Sharon and Carol as cotrustees of the survivor's trust and made Carol and James the cotrustees of the survivor's trust. Muriel died in 2003 after suffering from Alzheimer's disease for many years and Sharon's proposed contest asserts Muriel executed these amendments while incapacitated and unduly influenced by others.

Sharon filed an application seeking a determination under Probate Code section 21320 whether her proposed contest to the fifth and sixth amendments to the survivor's trust also constituted a contest to the exempt trust. (All undesignated statutory references are to the Probate Code.) The trial court granted the application, concluding that Sharon's proposed contest to the amendments of the survivor's trust would not constitute a contest to the exempt trust. In effect, the court's ruling allowed Sharon to challenge the amendments to the survivor's trust without risk of losing her inheritance under the exempt trust. The McIndoes appeal this order.

## DISCUSSION

### *General Legal Principles and Standard of Review*

■ A "contest" is "any action identified in a 'no contest clause' as a violation of the clause." (§ 21300, subd. (a).) A "no contest clause" is "a

provision in an otherwise valid instrument that, if enforced, would penalize a beneficiary if the beneficiary files a contest with the court." (§ 21300, subd. (d).) Such clauses are valid in California and are favored by the public policies of discouraging litigation and giving effect to the testator's expressed purposes. (*Burch v. George* (1994) 7 Cal.4th 246, 254 [27 Cal.Rptr.2d 165, 866 P.2d 92].) However, because a no contest clause may result in a forfeiture, "a court is required to strictly construe it and may not extend it beyond what was plainly the testator's intent. [Citations.]" (*Ibid.*)

 Under section 21320, a beneficiary may, without violating a no contest clause, apply to the court for a determination whether·a particular act would be a contest provided that no determination of the merits of the petition is required. Where, as here, a trial court rules on a section 21320 application without referring to extrinsic evidence, the appeal presents a question of law and requires us to independently construe the trust to determine whether the proposed petition violates the no contest clause. (*Burch v. George, supra,* 7 Cal.4th at p. 254.) "In construing a trust instrument, the intent of the trustor prevails and it must be ascertained from the whole of the trust instrument, not just separate parts of it." (*Scharlin v. Superior Court* (1992) 9 Cal.App.4th 162, 168 [11 Cal.Rptr.2d 448]; see § 21102, subd. (a) ["The intention of the transferor as expressed in the instrument controls the legal effect of the dispositions made in the instrument."].) We review the trust de novo, considering the circumstances under which the document was made in order to place ourselves in the position of the trustor to interpret the document. (*Wells Fargo Bank v. Marshall* (1993) 20 Cal.App.4th 447, 453 [24 Cal.Rptr.2d 507].) Each case depends upon its own peculiar facts and thus case precedents have little value when interpreting a trust. (*Ibid.*)

### Analysis

 The parties presented no extrinsic evidence to the trial court to aid in the interpretation of the trust document; thus, we must deduce the intent of the trustors from the face of the document. Although the McIndoes criticize the trial court for ruling without considering extrinsic evidence, they never offered any extrinsic evidence for the court's consideration and accordingly, they may not now complain about this on appeal.

The McIndoes contend that the no contest clause in the original trust applies to challenges to the original trust, the exempt trust and the survivor's trust. We agree.

The no contest clause was located in the "general provisions" section of the trust document, which specified that all general provisions "apply to each trust established hereunder[.]" Thus, the trust document specified that the no contest clause applied to the entire trust estate, including the exempt trust and the survivor's trust. Significantly, the amendments to the survivor's trust ratified all terms and conditions of the original trust or left the original trust unchanged. Because the no contest clause of the original trust applied to all subtrusts, there was no need to add a no contest clause to the exempt trust.

Sharon's application asked the trial court to decide whether her proposed contest to the survivor's trust also constituted a contest to the exempt trust. She stipulated that her proposed contest to the amendments of the survivor's trust *would violate* the no contest clause in the survivor's trust. On appeal, Sharon seeks to avoid her prior stipulation, arguing that she made the stipulation in error. The trial court did not reference Sharon's stipulation in its order, and her concession is not relevant to the instant appeal because Sharon's application sought to resolve the narrow question of whether her proposed contest to the amendments to the survivor's trust violated the no contest clause in the exempt trust, not whether it violated the no contest clause in the survivor's trust. Therefore, we need not address Sharon's change in position on this point.

The McIndoes contend that the trust document provided for the transfer of the deceased trustor's assets to the revocable survivor's trust, thereby giving the surviving trustor ownership and control of the deceased trustor's assets. They argue that this empowerment over the deceased trustor's assets evidenced the trustors' intent that the surviving trustor have complete control over all assets, making it reasonable to infer that they intended a beneficiary to forfeit her interest in the exempt trust in the event she unsuccessfully contested the survivor's trust. The language of the trust document compels the opposite conclusion, particularly when it is reviewed in conjunction with federal tax law.

Upon the death of the first trustor, the original trust estate split into two separate and distinct trusts, the survivor's trust and the exempt trust. Although the trust document gave the surviving trustor the power to amend the survivor's trust, the surviving trustor could not amend, revoke or terminate the exempt trust. The share of the original trust estate allocated to the survivor's trust was the surviving spouse's interest in the community prop-

erty, the surviving spouse's separate property, plus a minimum dollar amount necessary to eliminate any federal estate tax due upon the death of the first trustor. The balance of the estate was allocated to the exempt trust. The trustors' "primary objective" was for the survivor's trust to qualify for the marital deduction under Internal Revenue Code section 2056 (26 U.S.C. § 2056).

■ The trustors intended the original trust to create on the death of the first trustor a marital deduction trust under federal tax law. (26 U.S.C. § 2056 (b)(7)(B)(i).) Property that qualifies for this marital deduction is excluded from the decedent's gross estate for purposes of federal estate taxes; however, the property so excluded must then be included in the surviving spouse's estate for federal tax purposes when he or she dies. (26 U.S.C. § 2056(a), (b)(7)(A)(i).) The purpose of the marital deduction trust is to "prevent a decedent from being 'forced to choose between surrendering control of the entire estate to avoid imposition of estate tax at his death or reducing his tax benefits at his death to insure inheritance by the children.' [Citation.]" (*Estate of Shelfer v. C.I.R.* (11th Cir. 1996) 86 F.3d 1045, 1049.) In other words, a marital deduction trust allows a married couple to take advantage of the marital deduction under the statutory scheme without having the deceased spouse relinquish all control over the marital property to the surviving spouse. (See generally *Estate of Clayton v. C.I.R.* (5th Cir. 1992) 976 F.2d 1486, 1490–1493 [providing a historical perspective for the estate tax marital deduction].)

■ The McIndoes' assertion that the original trust gave the surviving trustor complete control of the deceased trustor's assets, is incorrect. Because the surviving trustor did not retain control of the assets in the exempt trust and did not have the power to amend, revoke or terminate the exempt trust, the surviving trustor retained no control over the exempt trust. As a result, it is reasonable to conclude that the trustors did not intend that a contest to amendments to the survivor's trust would result in a contest and possible forfeiture of the exempt trust. Rather, only a contest to the exempt trust could trigger a possible forfeiture of a beneficiary's rights under the exempt trust. Had the trustors intended a contest to a particular subtrust result in a contest to all subtrusts, they could have so stated. Following the McIndoes' interpretation, the surviving trustor would, in effect, be given power over the assets in the exempt trust, a result the trustors clearly did not intend, as evidenced by their use of a marital deduction and exempt trust.

## DISPOSITION

The order is affirmed. Respondent is to recover her costs on appeal.

Nares, Acting P. J., and McDonald, J., concurred.

A petition for a rehearing was denied September 20, 2005, and the opinion was modified to read as printed above. Appellants' petition for review by the Supreme Court was denied November 16, 2005.