[No. D050006. Fourth Dist., Div. One. Oct. 19, 2007.]

DAVID WILLIAM BETTS, Plaintiff and Appellant, v.
CITY NATIONAL BANK, as Trustee, etc., Defendant and Respondent.

**COUNSEL**

Susan Stricklin Wilson and Barbara K. Meserve for Plaintiff and Appellant.

Circuit, McKellogg, Kinney & Ross and Darl R. Danford for Defendant and Respondent.

## OPINION

**IRION, J.**—David William Betts appeals from a ruling on his application under Probate Code[1] section 21320 to determine whether a proposed probate court petition would constitute a contest to a testamentary trust under which he is a beneficiary. On our independent review of the record, we conclude that the probate court erred in ruling that Betts's proposed petition would constitute a contest against City National Bank and Wells Fargo Bank, N.A., and accordingly we reverse that portion of the probate court's ruling.

I

### FACTUAL AND PROCEDURAL BACKGROUND

In 1974, Joan Hazard Betts (the Trustor) created a revocable living trust (the Trust). Throughout the years before her death in 2002, she made several amendments to the Trust, two of which are relevant here. In 1993, the seventh amendment to the Trust (the Seventh Amendment) completely restated the Trust. In 1996, the ninth amendment to the Trust (the Ninth Amendment) removed Wells Fargo Bank (Wells Fargo) as trustee and appointed City National Bank (City National).

The Ninth Amendment expressly affirmed language appearing in the Seventh Amendment, which limits the liability of successor trustees: "A successor Trustee shall not be held responsible for the willful or negligent defaults of any prior Trustee; nor shall it be the duty of the successor Trustee to audit or obtain auditing of the trust estate or to demand an accounting by any prior Trustee; nor shall it be the duty of the successor Trustee to initiate or conduct any proceeding to redress a breach of trust committed by a prior trustee, unless so requested in writing by an adult having a present or future beneficial interest under a trust hereunder; *but any successor Trustee shall be liable only for its own willful misconduct or breach of good faith.* No bond shall be required of any Trustee or successor Trustee."[2] (Italics added.) Betts, who is the Trustor's son, is identified in the Seventh Amendment as a beneficiary of the Trust, along with his sister Susan Betts Hill (Hill). In 1993, the Trustor executed a statutory power of attorney in favor of Hill.

---

[1] All further statutory references are to the Probate Code unless otherwise specified.

[2] Relevant to this provision is section 16461, which allows for exculpation of a trustee by provisions in a trust instrument, with certain limitations. Specifically, section 16461 provides in relevant part: "(a) Except as provided in subdivision (b), (c), or (d), the trustee can be relieved of liability for breach of trust by provisions in the trust instrument. [¶] (b) A provision in the trust instrument is not effective to relieve the trustee of liability (1) for breach of trust committed intentionally, with gross negligence, in bad faith, or with reckless indifference to the interest of the beneficiary, or (2) for any profit that the trustee derives from a breach of trust."

The Seventh Amendment contained the following no contest clause: "If any beneficiary under this trust shall, singly or in conjunction with any other person or persons, contest in any court the validity of this trust or of the Settlor's last Will or shall seek to obtain an adjudication in any proceeding in any court that this trust or any of its provisions or that such Will or any of its provisions is void, or seek otherwise to void, nullify, or set aside this trust or any of its provisions, then the right of that person and his issue to take, which is given to him by this trust, shall be determined as it would have been determined had the person predeceased execution of this declaration of trust without surviving issue."

After the Trustor's death, Betts proposed to file a petition against Hill and City National under section 850, subdivision (a)(3)(B) for return of funds to the Trust, and Welfare and Institutions Code section 15657.3, subdivision (d) for elder abuse (the first proposed petition). The first proposed petition alleged (1) that Hill used her authority under a power of attorney and her status as a joint tenant on certain bank accounts to improperly take money from the Trustor for her own financial gain, and (2) that City National, acting as trustee of the Trust, breached its fiduciary duty by allowing Hill to misappropriate the funds, knowing that the Trustor was under Hill's influence and incapable of managing her own financial affairs.

To determine if, by requesting such relief, he would be in violation of the no contest clause of the Trust, Betts filed an application under section 21320 to obtain a declaration as to whether the first proposed petition would be a contest to the Trust in violation of its no contest clause (the first section 21320 application).

City National objected. It argued, among other things, that filing the first proposed petition would violate the no contest clause because of the provision in the Seventh and Ninth Amendments stating that "any successor Trustee shall be liable only for its own willful misconduct or breach of good faith" (the exculpation provision). It argued that the first proposed petition made no allegation that City National, acting as trustee, committed willful misconduct or acted in bad faith, and thus the proposed petition "violates and nullifies" the Trust's exculpation provision.

The probate court agreed, ruling, "Because the [first proposed petition] sets forth no allegations that Trustee willfully breached its fiduciary duties or failed to act in good faith, the [first proposed petition] constitutes an actual contest under the Trust's no-contest clause." With respect to the allegations made against Hill in the first proposed petition, the probate court ruled that those claims would not constitute a contest under the terms of the Trust.

Betts then proposed to file a different petition under section 850 to recover against Hill and City National, and also against Wells Fargo, which acted as trustee prior to City National (the second proposed petition).[3] The second proposed petition greatly expanded on the allegations against City National, adding specific details from several documents that were attached as exhibits to the proposed complaint, based on which Betts alleged that City National knowingly and willfully breached its fiduciary duty. It alleged that "City National Bank committed willful misconduct and a breach of good faith, and wrongfully breached the fiduciary duty owed to its client and Trust Beneficiary Joan Hazard Betts, by continuing to make substantial transfer of Trust funds to an account that . . . City National . . . knew was controlled by . . . Hill and in which the funds were being used for the benefit of . . . Hill." It also alleged that "City National transferred substantial sums of money into [a joint bank account allegedly controlled by Hill], knowing that . . . Hill was using her power of attorney to divert funds from this account for her own use." The second proposed petition sought, among other things, an order "that the deposit by . . . City National . . . of said funds in said joint account controlled by . . . Hill was wrongful and in bad faith, to the extent that . . . Hill appropriated said funds for her own personal benefit," and an order requiring either City National or Hill to return to the Trust an amount equal to twice the amount of funds allegedly misappropriated by Hill.[4]

To obtain a declaration that filing the second proposed petition would not constitute a contest under the Trust's no contest clause, Betts filed another application under section 21320 (the second 21320 application).

City National filed an objection.[5] It argued, among other things, that because the *first* proposed petition did not allege willful misconduct or bad faith, "[t]he new proposed [p]etition . . . attempts to make an allegation that contradicts his prior allegation and it should be barred." Further, City National argued that because the second proposed petition "makes the allegation that [City National] has liability that is depend[e]nt upon the conduct of . . . Hill," Betts was "attempting to assert that liability arises for [City National] that is not its 'own willful misconduct' but rather, derived from that of another," in violation of the Trust's exculpation provision.

---

[3] We express no opinion as to whether the proposed petition asserts a claim against City National or Wells Fargo that is cognizable under section 850. We note that City National argued below that Betts's claim against it does not fall within the scope of section 850, but the trial court did not rule on City National's argument.

[4] The second proposed petition sought relief against Wells Fargo on the same theory of wrongful conduct and bad faith.

[5] Wells Fargo filed a joinder to City National's objections. It has not made an appearance in this appeal. The parties have not briefed, and we make no determination as to whether Wells Fargo is a "successor Trustee" as that term is used in the Seventh Amendment.

City National also argued that the second proposed petition was an attempt to nullify the Trust provision that "[d]uring the lifetime of the Settlor, the Trustee shall account only to the [Trustor]." According to City National, the second proposed petition claimed "that [the Trustor] was not the only person entitled to an accounting, but rather, there should be some other retrospective accounting imposed."

The probate court ruled that the claims against City National and Wells Fargo in the second proposed petition would constitute a contest based on the provision limiting the liability of a successor trustee to willful misconduct or bad faith. It stated that Betts's second proposed petition "attempts to bypass the Court's decision on his first section 21320 application . . . by alleging that the actions of the proposed defendant trustee 'w[ere] wrongful and in bad faith, to the extent that . . . Hill misappropriated said funds for her own personal benefit.' " It stated that "[t]he legal part of this allegation (that the acts were 'wrongful' and 'in bad faith') is, however, conclusory, unsupported or limited by the latter, factual allegation (i.e., 'to the extent') respecting . . . Hill's conduct. This allegation must also be read in the context of the other factual allegations in the proposed petition, which show that [Betts's] claim against the proposed defendant banks is, at best, for negligence for depositing the alleged trust funds into the joint tenancy account(s)." The probate court also ruled "that [Betts] alleged in the [first proposed petition] that the banks committed no more than negligence, . . . and now, [Betts] is bound to this allegation (given there are no new factual allegations in the proposed petition) under the doctrine of 'conclusiveness of pleadings.' " As for the claims against Hill, the probate court again ruled that those claims would not offend the no contest clause. A notice of the probate court's ruling was served on Betts on November 1, 2006.

Betts then filed a petition that sought relief *only from Hill* for the funds that she allegedly misappropriated from the Trust. The petition was in the form of the second proposed petition, but all of the allegations against City National and Wells Fargo were deleted and replaced by brackets indicating that they were "*stricken pursuant to court order*." On December 11, 2006, while proceeding against Hill, Betts filed a notice of appeal of the portion of the probate court's ruling concerning City National and Wells Fargo.

## II

## DISCUSSION

### A. *City National's Challenges to the Appeal*

Before examining the merits of Betts's appeal, we pause to consider City National's argument that this appeal is improper on two separate grounds:

(1) that the appeal is untimely, and (2) that Betts has waived his right to appeal by proceeding against Hill.

### 1. *The Appeal Is Timely*

City National argues that this appeal is untimely because Betts's 60 days to appeal the probate court's ruling ran from the date that Betts received notice of the probate court's ruling on the *first* section 21320 application, not from the date that he received notice of the ruling on the second section 21320 application. City National argues "that the filing of [the second section 21320 application] is nothing more than a re-filing of the [first section 21320 application], with only superficial changes," and thus "the timeliness of the filing of an appeal should be based on the date of the original Order of the Probate Court" on the first section 21320 application, which was March 9, 2006. It argues that "[a] party should not be able to create a 'timely' appeal simply by re-filing a pleading to get a new Order from which to start the clock ticking."

We reject this argument because its factual premise is flawed. The second section 21320 application differed materially from the first section 21320 application because it sought a ruling concerning a materially different proposed petition. Among other things, the second proposed petition (1) greatly expands factual recitals concerning City National, quoting from numerous attached documents that were not attached to the first proposed petition; (2) contains many allegations against City National that did not appear in the first proposed petition, such as the allegation that City National "committed willful misconduct and a breach of good faith"; and (3) adds Wells Fargo as a party from which it seeks relief. It is evident from our review of the second proposed petition (1) that Betts proposed to file it to address the trial court's ruling on the first section 21320 application that the first proposed petition did not plead that City National engaged in willful misconduct or acted in bad faith, and (2) that the second proposed petition was thus drafted to contain distinctly different allegations from the first proposed petition.

Because the second proposed petition differed materially from the first proposed petition, the second section 21320 application necessarily differed materially from the first section 21320 application, and Betts could not have appealed from the issues decided in the probate court's ruling on the *second* section 21320 application by filing an appeal from the probate court's ruling on the *first* section 21320 application.

### 2. *Betts Did Not Waive the Right to Appeal by Proceeding with a Petition to Recover Against Hill*

Under section 1304, subdivision (d), a party may appeal from an order "[d]etermining whether an action constitutes a contest . . . ." City National contends that Betts waived the right to appeal when, based on the probate court's ruling on the second section 21320 application, he filed a petition against Hill that simply deleted all of the allegations against City National and Wells Fargo. City National argues that Betts "admittedly is consenting to and affirmatively abiding by the Probate Court's Order that he is purportedly appealing." Citing *Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 966 [9 Cal.Rptr.2d 92, 831 P.2d 317] (*Aubry*), City National argues that we should bar Betts from proceeding with the appeal under the rule that "[a] litigant's choice to amend a complaint after an adverse ruling by the court, and to go forward at the trial court level, constitutes a waiver of the right to appeal the underlying ruling."

The rule set forth in *Aubry* is not applicable here because it does not concern appeals from rulings under section 21320. *Aubry* stated that when a plaintiff amends a complaint in response to a ruling on a demurrer and judgment is entered after the trial court sustains a demurrer to the *amended* complaint, the plaintiff cannot appeal from the order sustaining the first demurrer regarding the *original* complaint. (*Aubry, supra,* 2 Cal.4th at p. 966, fn. 2.) Here, however, there was no ruling on a demurrer to an operative complaint, and there was no amendment to an operative complaint in response to such a ruling. Instead, this appeal concerns a ruling on an application brought under section 21320 to obtain a ruling whether a *proposed* petition would constitute a contest. City National cites no authority that would prevent a party from appealing from such an order and simultaneously proceeding to file a petition reflecting the claims for relief that the probate court held would *not* implicate the no contest clause.

City National also argues that Betts "expressly consented to the Probate Court's Order by referring to it on the face of his pleading." Specifically, City National points to the indication in the petition he filed against Hill that certain allegations from the second proposed petition were *"stricken pursuant to court order."* We reject City National's argument because nothing in the petition against Hill indicates that Betts "expressly consented" to the portion of the second section 21320 application that he is appealing here. Instead, we view the notation that certain allegations were "stricken pursuant to court

order" as a way for Betts to indicate that he had filed the same petition that the trial court had held would not constitute a contest as to Hill, but with the allegations against City National and Wells Fargo deleted. In doing so, Betts was not expressly *consenting to* the trial court's order concerning City National and Wells Fargo. Instead, he appears to have been carefully avoiding making any allegation that might constitute a contest in the event he was not successful in challenging the trial court's order through this appeal.

## B. *Standard of Review*

In reviewing the probate court's ruling on the second section 21320 application, we apply a de novo standard of review. (*Burch v. George* (1994) 7 Cal.4th 246, 254 [27 Cal.Rptr.2d 165, 866 P.2d 92] (*Burch*) [an appeal from a probate court ruling on a § 21320 application presents a question of law requiring the appellate court to independently construe the trust language].) Where, as here, "[t]he parties presented no extrinsic evidence to the trial court to aid in the interpretation of the trust document . . . , we must deduce the intent of the trustor[] from the face of the document." (*McIndoe v. Olivos* (2005) 132 Cal.App.4th 483, 487 [33 Cal.Rptr.3d 689] (*McIndoe*).)

## C. *Overview of the Law Concerning No Contest Clauses*

The sole issue in this appeal is whether the filing of the second proposed petition would constitute a contest under the Trust's no contest clause, as set forth in the Seventh Amendment.

■ We commence our analysis with an overview of the law pertaining to no contest clauses. A no contest clause "essentially acts as a disinheritance device, i.e., if a beneficiary contests or seeks to impair or invalidate the trust instrument or its provisions, the beneficiary will be disinherited and thus may not take the gift or devise provided under the instrument." (*Burch, supra*, 7 Cal.4th at p. 265.) "The purpose of no contest clauses 'is to discourage will contests by imposing a penalty of forfeiture against beneficiaries who challenge the will.' " (*Estate of Kaila* (2001) 94 Cal.App.4th 1122, 1128 [114 Cal.Rptr.2d 865] (*Kaila*).) "In essence, a no contest clause conditions a beneficiary's right to take the share provided to that beneficiary under such an instrument upon the beneficiary's agreement to acquiesce to the terms of the instrument. [Citation.] [¶] No contest clauses are valid in California and are favored by the public policies of discouraging litigation and giving effect to the purposes expressed by the testator." (*Burch*, at p. 254.)[6]

---

[6] Section 21300, subdivision (d) defines a " '[n]o contest clause' " as "a provision in an otherwise valid instrument that, if enforced, would penalize a beneficiary if the beneficiary files a contest with the court." Section 21300, subdivision (a) defines a " '[c]ontest' " as "any action identified in a 'no contest clause' as a violation of the clause. . . ."

■ Under section 21320, "a beneficiary may, without violating a no contest clause, apply to the court for a determination whether a particular act would be a contest provided that no determination of the merits of the petition is required." (*McIndoe, supra*, 132 Cal.App.4th at p. 487.)[7] " '[S]ection 21320 provides . . . a "safe harbor" for beneficiaries who seek an advance judicial determination of whether a proposed legal challenge would be a contest [under a particular no contest clause].' [Citation.] If a court determines that a particular proposed action would constitute a contest, the beneficiary will then be able to make an informed decision whether to pursue the contest and forfeit his or her rights under a will *or* to forgo that contest and accede to the will's provisions." (*Kaila, supra*, 94 Cal.App.4th at p. 1130.)

■ According to statute, we must apply a rule of strict construction in interpreting a no contest clause. (§ 21304 ["In determining the intent of the transferor, a no contest clause shall be strictly construed"].) "Because a no contest clause results in a forfeiture, . . . a court is required to strictly construe it and may not extend it beyond what was plainly the testator's intent." (*Burch, supra*, 7 Cal.4th at p. 254.) "Although no contest clauses are valid and favored by the public policies of discouraging litigation and giving effect to the testator's intent, they are also disfavored by the policy against forfeitures and therefore are strictly construed and may not extend beyond what plainly was the testator's intent." (*Kaila, supra*, 94 Cal.App.4th at p. 1128.) " 'Only where an act comes strictly within the *express* terms of the forfeiture clause may a breach thereof be declared.' " (*Graham v. Lenzi* (1995) 37 Cal.App.4th 248, 255 [43 Cal.Rptr.2d 407], italics added.)

■ When interpreting a no contest clause, " '[t]he answer cannot be sought in a vacuum, but must be gleaned from a consideration of the purposes that the [testator] sought to attain by the provisions of [his] will.' [Citation.] Therefore, even though a no contest clause is strictly construed to avoid forfeiture, it is the testator's intentions that control, and a court 'must not rewrite the [testator's] will in such a way as to immunize legal proceedings plainly intended to frustrate [the testator's] unequivocally expressed intent from the reach of the no-contest clause.' " (*Burch, supra*, 7 Cal.4th at p. 255.) " 'In construing a trust instrument, the intent of the trustor prevails and it must be ascertained from the whole of the trust instrument, not just separate parts of it.' " (*McIndoe, supra*, 132 Cal.App.4th at p. 487.)

---

[7] Section 21320, subdivision (a) provides: "If an instrument containing a no contest clause is or has become irrevocable, a beneficiary may apply to the court for a determination of whether a particular motion, petition, or other act by the beneficiary . . . would be a contest within the terms of the no contest clause."

Moreover, "[d]etermination of whether a prohibited contest has occurred must be made on a case-by-case basis" (*Estate of Lindstrom* (1987) 191 Cal.App.3d 375, 381 [236 Cal.Rptr. 376]), and " '[w]hether there has been a "contest" within the meaning of a particular no-contest clause depends upon the circumstances of the particular case and the language used' " (*Burch, supra,* 7 Cal.4th at pp. 254–255). "Each case depends upon its own peculiar facts and thus case precedents have little value when interpreting a trust." (*McIndoe, supra,* 132 Cal.App.4th at p. 487.)

### D. *The Second Proposed Petition Does Not Seek to Void, Nullify or Set Aside the Portion of the Trust Limiting the Liability of Successor Trustees*

The issue on which the parties focus is whether the second proposed petition violates the portion of the Trust's no contest clause applying to a beneficiary who "seek[s] otherwise to void, nullify, or set aside this trust or any of its provisions."

Betts argues that the second proposed petition does not seek to void, nullify or set aside any provision of the Trust, and seeks instead merely to impose liability on City National and Wells Fargo for their alleged breach of fiduciary duty, which would require them to reimburse the Trust for the amounts improperly disbursed during the Trustor's lifetime.

City National, in contrast, contends that the second proposed petition violates the Trust's exculpation provision, which, as we have explained, states that "*any successor Trustee shall be liable only for its own willful misconduct or breach of good faith.*"[8] (Italics added.) City National argues that as a successor trustee to Wells Fargo, it is protected by the exculpation provision, and that any petition by Betts seeking to hold it liable would be an attempt to

---

[8] Betts argues that because the exculpation provision appears in a paragraph limiting the liability of successor trustees, "the intention of the [T]rustor in including this language in the Ninth Amendment is to protect [City National] from being held responsible for any conduct by its predecessor, [Wells Fargo], but to hold [City National] accountable for its own actions." He argues that "[t]he [T]rustor did not intend by the language in the Ninth Amendment to exculpate [City National] from its own misconduct." We reject this argument because it does not take account of the wording of the exculpation provision, which specifically singles out only "willful misconduct" and "breach of good faith" as situations in which the successor Trustor will be liable for its own conduct. Apart from the plain language of the Trust documents, the record contains no evidence from which we may ascertain the Trustor's intent, and thus contains no evidence to support Betts's argument.

void, nullify or set aside the exculpation provision, unless Betts asserted a claim based on City National's "own willful misconduct or breach of good faith."

City National takes several different approaches to arguing that the second proposed petition does not seek to impose liability on City National for its own willful misconduct or bad faith. As we will explain, each approach lacks merit.[9]

First, City National argues that the second proposed petition does not seek to hold City National liable for its *own* willful misconduct but instead "is attempting to hold [City National] liable based on conduct that [Betts] alleges was committed by his sister, . . . Hill." We disagree. Although the second proposed petition alleges that Hill improperly sought to misappropriate funds from the Trust for her own use, it also alleges that actions performed solely by City National constituted a willful and knowing breach of fiduciary duty. The second proposed petition alleges, for example, that City National wrongfully released funds to joint accounts although it knew that Hill would misuse the funds. Thus, the second proposed petition alleges that City National is liable for its *"own* willful misconduct."[10]

Second, City National alleges that based on a statement in the second section 21320 application (*not* in the second proposed petition), Betts seeks to "impose a lower threshold of liability for [City National] that would void or nullify the Trust language that clearly sets a higher threshold." Specifically, City National points out that the second section 21320 application states, "The [second proposed petition] does not contest any provision of the Trust. The [second proposed petition] challenges the actions of [City National] in

---

[9] Because we conclude that the second proposed petition proceeds on allegations of willful misconduct and bad faith by City National, we need not expressly decide whether, if that petition were to proceed on a negligence theory, the Trust's no contest clause would be implicated. We note, however, that case authority holds that when a testamentary instrument contains a provision exculpating the trustee for certain types of conduct, and a beneficiary proposes to file a claim against the trustee that would offend the exculpation provision, the beneficiary would run afoul of the no contest clause if it were to file the proposed claim. (*Hearst v. Ganzi* (2006) 145 Cal.App.4th 1195, 1213 [52 Cal.Rptr.3d 473].)

[10] City National focuses on the petition's prayer for relief, which seeks an order "that the deposit by . . . City National . . . of said funds in said joint accounts controlled by . . . Hill was wrongful and in bad faith, *to the extent that . . . Hill misappropriated said funds for her own personal benefit*." (Italics added.) City National argues that the italicized portion of this prayer for relief shows that City National's alleged liability is "dependent upon" and "derived from" Hill's wrongful conduct, and thus the second proposed petition does not seek to hold City National liable based on its *own* conduct. We reject this argument. We understand the italicized phrase merely to be limiting City National's liability to the amount of those deposits which Hill misappropriated. We do not read the italicized phrase as indicating that City National's liability is based solely on Hill's conduct rather than its own.

the administration of the Trust (*that is, its negligent distribution of Trust funds to . . . Hill*) but does not challenge the terms, or the Trust."[11] (Italics added.)

We do not accept City National's invitation to focus on language in the second section 21320 application characterizing Betts's claims against City National. Instead, because the question presented to us is whether the filing of *the second proposed petition* would violate the no contest clause, we must look solely to how the second proposed petition *itself* asserts those claims. Doing so, we conclude that the second proposed petition plainly alleges that City National committed willful misconduct and acted in bad faith. The second proposed petition alleges that City National "committed willful misconduct and a breach of good faith, and wrongfully breached the fiduciary duty owed to [the Trustor]."

■ Third, City National argues that because the allegations in the first proposed petition pursued a negligence theory of liability against City National with its allegation that City National " 'acquiesced' " in Hill's misconduct, Betts should be prevented from asserting a different theory of liability in the second proposed petition. City National argues that Betts's allegations in the first proposed petition are "binding" on him under a doctrine it refers to as " 'conclusiveness of the pleadings.' " In support of its argument, City National cites a single case, *Valerio v. Andrew Youngquist Construction* (2002) 103 Cal.App.4th 1264, 1274 [127 Cal.Rptr.2d 436]. In *Valerio*, a defendant who admitted the existence of a contract in his answer to the complaint was bound by that admission because he had not sought to amend his answer. (*Id.* at pp. 1271–1272.) As Witkin explains, "Under the doctrine of 'conclusiveness of pleadings,' a pleader is bound by well pleaded material allegations or by failure to deny well pleaded material allegations." (4 Witkin, Cal. Procedure (4th ed. 1997) Pleading, § 413, p. 511.) "[U]nder the doctrine of conclusiveness of pleadings evidence may not be received to contradict an admission on the pleadings and . . . findings contrary to such admissions must be disregarded." (*Electronic Equipment Express, Inc. v. Donald H. Seiler & Co.* (1981) 122 Cal.App.3d 834, 850 [176 Cal.Rptr. 239].)

We conclude that this doctrine does not apply here. The first proposed petition was not a *filed* pleading constituting a complaint or an answer in this proceeding. Instead, it was a petition that Betts *proposed* to file only *if* the probate court decided that it would not constitute a contest. Precisely because

---

[11] The language in the second section 21320 application, claiming that City National acted negligently, appears to have been copied without change from the first section 21320 application. That application involved a *different* proposed petition and focused on a negligence theory.

the probate court determined that the first proposed petition *would* constitute a contest as to City National, Betts elected *not* to file it. Under such circumstances, the doctrine of conclusiveness of pleadings has no application.[12] If we were to accept City National's approach, litigants would be bound to proceed based on legal theories that they never committed to pursue, and we would thus negate the policy behind section 21320, which is to allow a party to file an application to find out if certain *possible* legal claims would constitute a contest, and then to be free to *drop* those claims so as not to risk being deprived of benefits under a testamentary instrument.

■ Perceiving no merit to City National's claims that the allegations of the second proposed petition seek to void, nullify or set aside the Trust's exculpation provision, we conclude that the trial court erred in concluding that the second proposed petition would constitute a contest to the Trust's exculpation provision.

E. *The Second Proposed Petition Does Not Seek to Void, Nullify or Set Aside the Portion of the Trust That Gives the Trustor the Obligation to Account Only to the Trustor During Her Lifetime*

In opposing Betts's appeal, City National asserts an argument that it raised in the probate court, but that the probate court did not reach. City National argues that the second proposed petition is an attempt to void, nullify, or set aside a provision of the Trust because it seeks relief that is contrary to a provision in the Trust indicating that during the Trustor's lifetime, the trustee has an obligation to provide an accounting to the Trustor alone.

Specifically, City National relies on the following provision of the Trust, as set forth in the Seventh Amendment: "During the life of the [Trustor], the Trustee shall account only to the [Trustor.]" City National argues that Betts alleges in the second proposed petition that "during his mother's life the Trustee's duties were not as spelled out in the Trust, and that [the Trustor] was not the only person entitled to an accounting, but rather, there should be some other retrospective accounting imposed." According to City National, the second proposed petition therefore "would nullify the express provisions of the Trust."

We reject this argument because the second proposed petition does not seek to have City National provide an *accounting* to Betts. Nowhere in the

---

[12] Moreover, even if we were to hold that Betts is bound by the factual allegation that City National " 'acquiesced' " in Hill's conduct, we would conclude that fact to be fully consistent with the allegation in the second proposed petition that City National "committed willful misconduct and a breach of good faith and wrongfully breached the fiduciary duty owed to [the Trustor]." A person may acquiesce in another person's conduct and still commit willful misconduct and act in bad faith.

prayer for relief is such a remedy sought. Instead, the second proposed petition seeks to impose liability on City National for its alleged breach of fiduciary duty, which as we have discussed, Betts alleges to have been committed willfully and in bad faith. For this reason, we conclude that the second proposed petition does not constitute a contest to the Trust's provision that "[d]uring the life of the [Trustor], the Trustee shall account only to the [Trustor]."

## DISPOSITION

The probate court's order on the second section 21320 application is reversed to the extent that it determined that the claims against City National and Wells Fargo in the second proposed petition would constitute a contest to the Trust.

McConnell, P. J., and Aaron, J., concurred.