[No. A125736. First Dist., Div. One. Sept. 15, 2010.]

Estate of MARGARET CAIRNS, Deceased.
KENNETH GRANT CAIRNS, as Trustee, etc., et al., Petitioners and Respondents, v.
KENNETH S. CAIRNS, Objector and Appellant.

## COUNSEL

Foley McIntosh Frey & Claytor and James D. Claytor for Objector and Appellant.

Zeller, Hoff & Zeller, Paul M. Hoff; Dickenson, Peatman & Fogarty and David A. Diamond for Petitioners and Respondents Kenneth Grant Cairns and Glenn Ellwood Cook.

John A. Hartog for Petitioners and Respondents Kenneth Grant Cairns and Nancy C. Pace.

## OPINION

**DONDERO, J.**—In a proceeding on a probate petition filed by the trustees of a testamentary trust, the court interpreted a provision—known as the "five-or-five" provision—for annual distribution of principal to a life beneficiary, and found that the provision authorized the distribution to include an interest in real property in addition to money. In this appeal, a remainder beneficiary argues that the trial court's interpretation of the trust document was erroneous, and complains that he was improperly denied an evidentiary hearing. We conclude that the trial court's interpretation of the five-or-five provision was consistent with the testator's intent, and no evidentiary hearing was required. We therefore affirm the judgment.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

Margaret Cairns, the decedent, executed a will in 1975, and died in 1977. A judgment of final distribution of her estate was entered in Napa County Superior Court in December of 1980, which, pursuant to the terms of the will, created a testamentary trust (Trust). Decedent's only child, respondent Kenneth Grant Cairns (Grant), was appointed sole trustee and was an income beneficiary of the Trust.[1] The will specified that Grant was to receive the "entire net income of the [T]rust," and "such amounts of [the] principal as are necessary" to provide for his health and "support in his accustomed manner of living."[2] In addition, the five-or-five provision of the will in paragraph 3 of article Fourth specified: "The Trustee shall also pay to my son during his lifetime, from the principal of the trust, such amounts as he may from time to time request in writing, not exceeding in any calendar year, non-cumulatively, the greater of the following amounts: Five Thousand Dollars ($5,000.00) or Five Per Cent (5%) of the value of the principal of the trust, determined as of the end of the calendar year." Grant's two children, appellant Kenneth S. Cairns (Kenneth) and respondent Nancy Christine Pace (Nancy), were designated the remainder beneficiaries of the Trust. According to the terms of the will and the final distribution order, upon Grant's death the remaining balance of the Trust estate "shall be distributed free of trust in equal shares" to Kenneth and Nancy.

Grant thereafter served as sole trustee of the Trust until 2005, and in each year he filed annual accounting reports approved by the trial court that specified the amounts of Trust principal he received through the exercise of his five-or-five election. In a few of those years, Grant received shares of stock from the Trust rather than cash as his annual income distribution. In June of 2005, at Grant's request the court appointed respondent Glenn Elwood Cook to serve as cotrustee of the Trust. Subsequently the annual accounts and reports were filed jointly by Grant and Cook as cotrustees.

On August 29, 2007, the trustees filed a petition for approval of the 23d annual account and report (the 23d report) for the calendar year 2006. The petition stated that for the calendar year 2005, Grant elected to receive only $5,000, which was paid to him on December 19, 2006, rather than 5 percent of the value of the principal of the Trust, which was $55,505.05. The value of the Trust assets reported by the trustees for the calendar year that ended December 31, 2006, was $1,078,123.44; 5 percent of the value was

---

[1] For the sake of clarity and convenience, we will refer to the parties individually, as has been done in the briefs, by their first names.

[2] Decedent's daughter-in-law, Greta Cairns, was granted an intervening life estate in the assets of the Trust in the event of Grant's death. She died in April of 2007.

$53,906.17. Grant had not yet elected to exercise his five-or-five distribution of principal, but declared that he would determine "on or before December 31, 2007, the amount of principal, up to $53,906.17, that he will request as a distribution of the principal from the trust, if any." The report did not list the market value of the real property assets of the Trust, but rather only the "carrying value" of the property. The petition to approve the 23d report for the calendar year 2006 was granted on October 2, 2007. On December 31, 2007, Grant delivered a letter to the trustees in which he stated that pursuant to the order approving the 23d report, "I hereby request that the Trustees distribute to me as beneficiary, 5% of the principal assets of the trust as of December 31, 2006, the sum of $53,906.17."

A petition for approval of the 24th annual account and report (the 24th report) was filed by the trustees on June 18, 2008. The 24th report specified that the Trust estate had a fiduciary accounting value of $805,042.19 at the beginning of the accounting period, January 1, 2007. Based on appraisals obtained by the trustees, as of December 31, 2007, the fair market value of the Trust's real property was reported as $14.26 million; the fair market value of the Trust estate was $14,591,173.57. The trustees reported a net profit during the year of $7,679.90 on the Trust's Yolo County ranch, but a net loss of $147,557.08 on the Trust's Napa County ranch. No "net distributable fiduciary accounting income," which under the Trust is to be paid to Grant, was earned during the period of the accounting. Grant made personal loans to the Trust, both before and during the accounting period, and the 24th report stated that the Trust owed him a total of $117,120.05.

The 24th report did not specify that Grant made a request for a distribution of principal in 2007 pursuant to the five-or-five provision. Nor did the report indicate that any distribution of principal or income was made to Grant, although the report listed as one of the disbursements for the year 2007 a partial satisfaction of the 2006 principal withdrawal in the amount of $5,906.17 paid to Grant on December 31, 2007—of the total requested amount of $53,906.17 for the year 2006, leaving a balance due him of $48,000. The petition for approval of the 24th report was granted after Kenneth requested dismissal of his objections to the account and report without prejudice.

In a letter to cotrustee Cook dated September 15, 2008, Grant requested his 5 percent distribution of principal of the Trust for the year that ended December 31, 2007. He noted that according to the 24th report the Trust assets had a fair market value of $14,591,173.57, and requested a "principal distribution equal to 5% of that fair market value—$729,558.68." He further requested that the distribution take the form of a conveyance to him of "an undivided [5.325 percent] fractional interest in real property commonly

known as 3683 Silverado Trail, St. Helena," which according to the 24th report had a fair market value of $13.7 million, and "the balance in cash." Grant sent another letter to cotrustee Cook dated November 18, 2008, in which he explained that the prior request for principal distribution pursuant to the five-or-five provision "was for the calendar year 2007." He added: "I reserve my right to exercise the power for year 2008 when the property on hand is determined at the end of the current calendar year."

The trustees did not accept Grant's request for a principal distribution for 2007, and instead on November 21, 2008, filed a petition for construction of trust and for instructions authorizing cotrustees to distribute 5 percent of principal assets of trust to beneficiary (the petition). Specifically, the petition sought instructions on several matters related to distribution of Trust principal pursuant to the five-or-five provision: whether the noncumulative withdrawal must be requested and exercised in the same discrete calendar year; whether Grant's letters of September 15 and November 18, 2008, were "a valid election" for distribution of 5 percent of the fair market value of the principal of the Trust for the calendar year 2007; whether the "valuation date" of the distribution "is December 31 of the year to which the request for distribution" is to be applied; and whether the Trust, which did not "currently have liquid assets" to satisfy "in cash" Grant's 5 percent request for 2007, was allowed to make the distribution with "each and every asset of the Trust," including a partial tenant in common interest in real property, as requested by Grant. A valuation of the principal of the Trust as of December 31, 2007, was also requested.

Kenneth answered and submitted objections to the petition and the 24th report filed by the trustees. Among other contentions Kenneth protested that any " 'in-kind' distribution of 5% of each asset that comprises the Trust principal" to Grant was unauthorized by the Trust. He asserted that as properly construed the will of Margaret Cairns requires that the exercise of the power to withdraw principal under the five-or-five provision "**and** the payment must be made in the same calendar year," and failure to do so "constitutes a waiver on the part of the beneficiary to receive a payment of the specified amount of principal in a subsequent year." He also alleged that the Trust is entitled "to a set-off" pursuant to Code of Civil Procedure section 431.70 "as against any amounts of principal that income beneficiary" Grant may receive. In his answer Kenneth further requested an "evidentiary hearing" on his objections to the petition and the 24th report.

Grant filed a reply in which he suggested an interpretation of the five-or-five provision—that is, paragraph 3 of article Fourth—of the Trust to mean that the beneficiary's right to an annual principal withdrawal of $5,000 or 5 percent of the fair market value of the Trust assets refers to the value "as of

December 31 of the preceding year." He added: "Requests for such withdrawals must be dated and in writing. The right to make such withdrawals is non-cumulative, meaning that the right is forfeited to the extent that requests for withdrawals made during a calendar year total less than the maximum amount of withdrawals allowed for that year under this Paragraph. Distributions of principal made pursuant to such requests may, at the discretion of the Trustees, be in the form of money or its equivalent or in-kind distributions of undivided interests in principal assets other than money or its equivalent."

Following a hearing on February 27, 2009, the trial court adopted Grant's proposed interpretation of the five-or-five provision. The court also determined that the "language 'Five Per Cent (5%) of the value of the principal of the Trust,' " in paragraph 3 of article Fourth "shall refer to the fair market value of the Trust assets." Grant's "letters dated September 15, and November 18, 2008" were found to be "a valid election in 2008" for "distribution of 5% of the fair market value of the principal of the Trust, including Trust real property, with a valuation date of December 31, 2007." The trustees were granted authorization to make a distribution to Grant of "5 % of the fair market value of the principal assets of the Trust as of December 31, 2007," in the form of "money or its equivalent, in-kind distributions of undivided interests in principal assets other than money or its equivalent, or a combination of both." Kenneth's request for an evidentiary hearing was denied. This appeal followed.

## DISCUSSION

I. *The Interpretation of the Requirement of Noncumulative Requests for Principal Distributions in the Five-or-five Trust Provision.*

Kenneth challenges the trial court's interpretation of the five-or-five Trust provision that grants to Grant as the beneficiary the right to request annual distributions of the principal of the Trust "not exceeding in any calendar year, *non-cumulatively*, the greater of" $5,000 or 5 percent "of the value of the principal of the trust, determined as of the end of the calendar year." (Italics added.) Kenneth argues that the prohibition against cumulative distributions must be construed to mean that for each year the distribution demand must "be made before the end of the year," and distributions "cannot be 'added to' later." He maintains that the intent of the decedent was to prevent the life estate beneficiary from waiting until "after the close of a year to 'catch up,' " as the trial court ordered. He points out that in the 24th report the cotrustees did not mention any "request in writing" by Grant for a distribution of principal in the year 2007. Kenneth further asserts that no other evidence proves that Grant took any action "during the calendar year 2007 to manifest his intent to exercise his power of appointment for that year." Instead, he did

not make a request for distribution "until October of 2008." Kenneth therefore argues that Grant's "power of appointment lapsed for the year 2007," and he was not entitled to the distribution he requested and the trial court ordered.

■ Kenneth's contention calls upon us to interpret the language of the five-or-five provision of the Trust. " 'In construing trust instruments, as in the construction and interpretation of all documents, the duty of the court is to first ascertain and then, if possible, give effect to the intent of the maker.' [Citations.]" (*Gardenhire v. Superior Court* (2005) 127 Cal.App.4th 882, 888 [26 Cal.Rptr.3d 143].) "Section 21102 provides, '[T]he intention of the transferor as expressed in the instrument controls the legal effect of the dispositions made in the instrument.' " (*Brown v. Labow* (2007) 157 Cal.App.4th 795, 812 [69 Cal.Rptr.3d 417]; see also *Aguilar v. Aguilar* (2008) 168 Cal.App.4th 35, 39 [85 Cal.Rptr.3d 193].) ■ " 'In construing a trust instrument, the intent of the trustor prevails and it must be ascertained from the whole of the trust instrument, not just separate parts of it.' [Citations.]" (*McIndoe v. Olivos* (2005) 132 Cal.App.4th 483, 487 [33 Cal.Rptr.3d 689].)

The parties presented no extrinsic evidence to the trial court to aid in the interpretation of the Trust document, so we must "review the trust de novo, considering the circumstances under which the document was made in order to place ourselves in the position of the trustor to interpret the document." (*McIndoe v. Olivos, supra*, 132 Cal.App.4th 483, 487.) "The interpretation of a trust instrument, like any written document, is a question of law. [Citations.] Under applicable rules of interpretation of written instruments, where there is no conflicting evidence, the reviewing court must independently interpret the document." (*Brown v. Labow, supra*, 157 Cal.App.4th 795, 812; see also *Ike v. Doolittle* (1998) 61 Cal.App.4th 51, 73 [70 Cal.Rptr.2d 887].)

We agree with Kenneth, as do respondents, that by requiring the beneficiary to request annual distributions "non-cumulatively," the decedent's intent was to prohibit any accumulation of annual distributions of principal. The right to an annual distribution of principal is forfeited if not exercised in a calendar year. The beneficiary cannot fail to request a distribution in one year, then add it to the distribution for the following year.

Where we diverge from the interpretation of the five-or-five provision advocated by Kenneth is in his assertion that the request for an annual distribution of principal must be made in the same calendar year as the distribution to which it relates. The provision does not include any language that requires the request and distribution to both occur in a single year. To the contrary, when read as a whole and in context, as it must be, the five-or-five provision suggests otherwise. (*Wells Fargo Bank v. Marshall* (1993) 20 Cal.App.4th 447, 452–453 [24 Cal.Rptr.2d 507].)

Kenneth's assertion that the "plain directive of the Trust" requires the beneficiary to "make the request in a given year in order to be able to receive a distribution, then or later, on account of that year," conflicts with the essential operation and language of the Trust. The five-or-five provision does not impose a time requirement on the beneficiary's distribution demand. The provision grants the beneficiary the right to demand "from the principal of the trust, such amounts as he may from *time to time request* in writing, not exceeding in any calendar year, non-cumulatively, the greater of the following amounts: Five Thousand Dollars ($5,000.00) or Five Per Cent (5%) of the value of the principal of the trust, *determined as of the end of the calendar year*." (Italics added.) As we read the provision, the beneficiary may make multiple demands from "time to time" for distribution of Trust assets for a calendar year as long as the total amount demanded is no greater than $5,000 or 5 percent of the value of the principal of the Trust. The directive that the request must be noncumulative refers to the total *amount* of the permissible distributions in a calendar year, not the date by which the demand must be exercised. Finally, the total maximum distribution available to the beneficiary in any given calendar year is not ascertained or determined until the "end of the calendar year." Thus, if the 5 percent distribution is elected, the beneficiary will not even know the amount of the permissible demand until after the calendar year has concluded and an accounting is completed. The beneficiary may often not have adequate information to make a prudent decision as to which five-or-five election—5 percent or $5,000—is appropriate during the calendar year. We are persuaded that the intent of the decedent as expressed in the language of the provision was to authorize Grant to exercise his right to demand principal distributions at any time after the end of a calendar year as long as his demands within the calendar year thereafter do not exceed the specified five-or-five maximum.

We therefore interpret the five-or-five provision to mean during his lifetime Grant is not required to make a single demand for distribution of principal during each calendar year in which the maximum total amount of the distribution is calculated; he may make multiple written demands for distribution of principal from time to time within a single year, as long as the total amount requested for any single calendar year does not exceed the annual 5 percent or $5,000 maximum; the proscription against noncumulative requests prohibits him from making demands for less than the maximum amount for one calendar year, then seeking to add the amount not requested for that year to the distribution the next year; the total maximum distribution amount available to him, whether it is 5 percent or $5,000, is calculated as of the end of each calendar year; and, he must make his demands for distribution before

the end of the next calendar year after the determination of the value of the principal of the Trust to avoid the ban against noncumulative distributions "in any calendar year."[3]

II. *Grant's Exercise of the Right to Demand a Principal Distribution for the Year 2007.*

We turn to an examination of Grant's exercise of his right to demand principal distribution for the calendar year 2007, to determine his compliance with the five-or-five provision as we have interpreted it. Kenneth claims that Grant did nothing "during the calendar year 2007" to exercise his power of appointment, and thus it "lapsed for the year 2007."

We have found that the Trust does not require Grant to exercise his right to a principal distribution in a given calendar year to receive the distribution related to that same year. Thus, he was not required to make his demands *for* the year 2007 *in* the year 2007. The ban on cumulative distributions required him to demand principal distributions not in excess of the five-or-five maximum for the year 2007 by no later than the end of 2008. This he did. His letters of September 15 and November 18, 2008, complied with the requirements of a "request in writing," specified the nature of the request, and did not exceed the 5 percent maximum as specified in the previously filed 24th report. Grant indicated in the letters that the requested distribution was for the principal of the Trust for the year that ended December 31, 2007. The five-or-five provision demanded nothing more. Neither the designation of the year to which the distribution applies, the method of calculation of the amount, nor the manner of exercise of the demand—other than in writing—is required by the Trust. Grant did not request a cumulative distribution for 2007, nor did his demand in 2008 constitute an impermissible "make-up" for a prior year, as Kenneth suggests. Grant made a demand in 2007, but it applied to the calendar year 2006.

Contrary to Kenneth's argument, the fact that the 24th report issued in 2008 failed to mention any distribution demand by Grant for the year 2007 did not render the request invalid. Again, nothing in the five-or-five provision requires that a demand for a principal distribution for a given calendar year be mentioned in the accounting and report for that year. In many instances, the beneficiary must wait until the annual report has been issued to discern

---

[3] We reject Kenneth's contention that the trial court's "interpretation of the instrument also is not in accord with applicable provisions of federal tax law." We deal in the present case with an issue of interpretation of a trust document, which implicates state rather than federal tax law. Further, Kenneth's suggestion that under "these tax rules, the beneficiary's right to the disbursement lapses if the power is not exercised," is in keeping with our determination of the meaning of the five-or-five provision.

the nature and extent of the demand that is appropriate for the year. The trustees may have included reference in the annual report to Grant's exercise of his right to principal distribution in some years as an administrative or accounting practice, but the Trust did not specify that as a condition of a valid election. When interpreting the Trust instrument we will not imply a condition—that the annual accounting and report must contain a recitation of the principal distribution demand by the beneficiary for that year—where none is stated in the language of the five-or-five provision and the condition is antithetical to both the distribution right expressly granted by the document and the commonsense execution of the Trust. (See *Cook v. Cook* (2009) 177 Cal.App.4th 1436, 1442–1443 [99 Cal.Rptr.3d 913]; *New Hampshire Ins. Co. v. Ridout Roofing Co.* (1998) 68 Cal.App.4th 495, 504–505 [80 Cal.Rptr.2d 286].) We conclude that Grant made a timely and valid request in 2008 for a distribution of Trust principal for the calendar year 2007.

III. *The Distribution of Trust Principal in the Form of Nonmonetary Assets.*

Kenneth also argues that the trial court erred by authorizing a principal distribution to Grant of either money or "in-kind distributions of undivided interests in principal assets other than money or its equivalent, or a combination of both." He maintains that use of the language "pay" to the beneficiary in the five-or-five provision "connotes a payment of money, not a transfer of real estate" or other in-kind property. Kenneth points out that the "Trust itself" in other provisions uses the terms "distribute" or "distribution in kind" to refer to "disbursement of noncash property," whereas the five-or-five provision "uses the term 'pay' exclusively" when referring to the beneficiary's right to a principal distribution. "Further evidence that only cash payments were intended" by the decedent is found, Kenneth claims, in the use of the terms "amounts" requested by the beneficiary and the "value" of the principal of the Trust, which he submits, "is consistent with an intent that there be a payment of cash in an amount based on the **value** of the property, but is inconsistent with an intent that there be a distribution of an **interest** in the property itself."

We decline to ascribe to the testator an intent to restrict the operation of the Trust in a manner that may impair the interests of both the life and remainder beneficiaries. The five-or-five provision does not provide that the annual distribution of the principal of the Trust may only take the form of a cash payment. The nature or form of the payment to Grant is not specified at all. The provision uses the terms "pay" and "amounts," but does not state that the amounts must be paid in cash. We will not interpret the words "pay" and "amounts" in a technical or limited sense where to do so conflicts with the efficient management of the Trust. Provisions in a testamentary instrument are

to be given a liberal and reasonable interpretation rather than a narrow and technical one, with a view to discovering the decedent's testamentary intent, and the apparent meaning of particular words, phrases and provisions is to be subordinated to the testator's plan or dominant purpose. (*Estate of Pelletier* (1963) 221 Cal.App.2d 347, 350 [34 Cal.Rptr. 413].) If the Trust does not possess adequate cash assets to pay Grant his annual principal distributions in some years, as apparently has occurred, imposition of a "cash only" requirement would force the trustees to liquidate Trust assets, perhaps in financially disadvantageous circumstances, to satisfy Grant's annual demands, thereby adversely affecting the Trust principal to the disadvantage of all the beneficiaries. A technical interpretation of the terms "pay" and "amounts" in the five-or-five provision to limit the annual principal distribution to cash would conflict with the testator's purpose to provide Grant with a life interest in a portion of the principal while retaining the residue of the Trust assets for the remainder beneficiaries.

■ Further, other parts of the will grant the trustees broad authority to hold, manage and control the Trust assets to carry out the five-or-five provision, specifically including the power to convey, reinvest, or encumber property when necessary. We must examine the will as a whole and harmonize its provisions by construing all parts in relation to each other so as to give effect to the intent of the testator. (See *Newman v. Wells Fargo Bank* (1996) 14 Cal.4th 126, 134 [59 Cal.Rptr.2d 2, 926 P.2d 969]; *Estate of Salmonski* (1951) 38 Cal.2d 199, 209 [238 P.2d 966]; *Estate of Maxwell* (1958) 158 Cal.App.2d 544, 548 [322 P.2d 1018].) In the absence of language that requires payment to Grant in *cash* alone, we cannot restrict the discretion of the trustees to properly manage the Trust assets by meeting the beneficiary's request for principal with an in-kind distribution. Considering the Trust in its entirety and avoiding an interpretation that would compromise both the competent functioning of the Trust and the testator's intent, we conclude that the terms "pay" and "amounts" in the five-or-five provision do not prohibit the trustees from making a distribution to Grant of 5 percent of the fair market value of the principal assets of the Trust in the form of money or its equivalent, in-kind distributions of undivided interests in principal assets other than money or its equivalent, or a combination of both, as the trial court ruled.

IV. *The Creation of a Conflict of Interest.*

We turn to Kenneth's argument that the order of distribution to Grant of a proportional interest (5.325 percent) as a tenant in common of real property owned by the Trust created a direct and "irreconcilable conflict of interest" with "his duties as Trustee to conserve Trust assets." He complains that "when the Trustee holds title as a beneficiary, his loyalty is divided." Kenneth

seeks to explain his position by pointing out that if Grant is a "co-owner of the Trust real estate" as a beneficiary "holding a tenancy in common interest with himself as Trustee," he will have "the unfettered power to force a sale of the Trust property." That power, complains Kenneth, "will directly conflict with his duties as Trustee to conserve Trust assets," including unique parcels of real property.

We begin our discussion by observing that Kenneth has utterly failed to cite any authority or present legally supported analysis for his argument that a conflict of interest has been created which invalidates the distribution order. We may therefore treat the issue as waived or meritless without further consideration of it. (See *Moulton Niguel Water Dist. v. Colombo* (2003) 111 Cal.App.4th 1210, 1215 [4 Cal.Rptr.3d 519]; *Susag v. City of Lake Forest* (2002) 94 Cal.App.4th 1401, 1416 [115 Cal.Rptr.2d 269]; *Badie v. Bank of America* (1998) 67 Cal.App.4th 779, 784–785 [79 Cal.Rptr.2d 273].)

■ In any event, we find no conflict of interest that necessitates reversal. The testator created the dual relationship that placed Grant in the position of life beneficiary and trustee, and thus was aware of the potential divergence of his interests and those of the remainder beneficiaries. She was also aware that under the five-or-five provision Grant may receive a partial interest in the real property of the Trust to satisfy his annual principal distribution. We presume the testator was cognizant of the legal effect of the testamentary scheme created. (See *Newman v. Wells Fargo Bank, supra,* 14 Cal.4th 126, 136; *Ehrenclou v. MacDonald* (2004) 117 Cal.App.4th 364, 370 [12 Cal.Rptr.3d 411]; *Wells Fargo Bank v. Huse* (1976) 57 Cal.App.3d 927, 933 [129 Cal.Rptr. 522].)

■ The conflict of interest in the present case remains at most theoretical. The mere possible conflict between Grant's interest as a beneficiary of the Trust and his position as trustee does not require either his removal as trustee or the invalidation of the order granting him a partial tenant in common interest in the real property. We realize that "[t]he violation by a trustee of any duty owed to the beneficiaries of the trust constitutes a breach of trust. (Rest.2d Trusts, § 201, pp. 442–444.) Such duties include the duty of loyalty, the duty to avoid conflicts of interest, the duty to preserve trust property, the duty to make trust property productive, the duty to dispose of improper investments, and the duty to report and account." (*City of Atascadero v. Merrill Lynch, Pierce, Fenner & Smith, Inc.* (1998) 68 Cal.App.4th 445, 462 [80 Cal.Rptr.2d 329].) "Any violation of such duties constitutes a fraud against the beneficiaries. [Citations.] [¶] Moreover, a trustee is subject to removal whenever his private interests conflict with his trust duties." (*Estate of Vokal* (1953) 121 Cal.App.2d 252, 257–258 [263 P.2d 64].) However, "[w]here a trustee is named by the settlor who is aware of the possible

conflicts of interest inherent in the appointment, removal on the ground of conflict of interest is ordinarily unwarranted without an actual breach of trust. [Citations.] The bare potential for a conflict of interest does not categorically bar a fiduciary from functioning as a trustee." (*Claypool v. Wilson* (1992) 4 Cal.App.4th 646, 676–677 [6 Cal.Rptr.2d 77], fn. omitted.) No actual dishonesty or any action by Grant antithetical to the interests of the Trust has been demonstrated here. The purported conflict consists of relationships known to the settlor and expressly sanctioned by her, so no violation by Grant of any fiduciary duty owed to the remainder beneficiaries of the Trust is indicated. (*Estate of Gilliland* (1977) 73 Cal.App.3d 515, 528 [140 Cal.Rptr. 795].) We find that the trial court's order of distribution of a partial interest in real property to Grant has not created a conflict of interest.

## V. *The Denial of an Evidentiary Hearing.*

Kenneth's final contention is that the trial court erred by failing to hold an evidentiary hearing on "new matters" alleged in his amended answer to the trustees' petition. Kenneth submits that an evidentiary hearing was required to resolve issues such as whether he was entitled to "an offset" against the proposed principal distribution, or "a surcharge" against the trustees for their failure to manage the Trust assets "as prudent investors" in compliance with the Uniform Prudent Investor Act (Prob. Code, § 16047 et seq.). He also claims that his answer, in which he alleged a breach by Grant of his fiduciary duties to the remainder beneficiaries in his "dual capacity as the beneficiary and Co-Trustee," demanded an evidentiary hearing to consider facts related to the damages suffered by the Trust as a result of the breach. He asks that we reverse the judgment and remand the case with directions to the trial court to "conduct an evidentiary hearing on the other claims alleged in the Amended Answer."

We observe that Kenneth did request an evidentiary hearing on matters alleged in his answer to the petition, which he asked to be consolidated with the pending hearing on his objections to the petition to approve the 24th report. By the date of the hearing on the petition, however, no consolidation had been ordered.[4] The case before us in this appeal proceeded solely on the trustees' petition to obtain an interpretation of the five-or-five provision and for instructions on the manner of proper annual distribution of principal to Grant under it. The issues presented by the petition as framed by the pleadings were limited to discerning the meaning of the noncumulative language of the five-or-five provision as it related to the timing of Grant's requests for annual distribution of principal, and the nature of the assets of the Trust subject to the distribution. The trustees' failure to act as prudent investors and Kenneth's right to an offset against the proposed principal

---

[4] Kenneth ultimately voluntarily dismissed his objections to the 24th report.

distribution were not at issue at the hearing on February 27, 2009, but instead were left to consideration in the separate proceeding on the petition to approve the 24th report. At the hearing, counsel for Kenneth argued that "factual issues" existed "with respect to the meaning" of the five-or-five provision, but did not propose to offer any extrinsic evidence to prove the intent of the decedent. Thus, only issues of law remained as to the interpretation of the Trust document by the court. (*Gardenhire v. Superior Court, supra,* 127 Cal.App.4th 882, 888.) Kenneth cannot now criticize the trial court for ruling without consideration of extrinsic evidence or for failing to schedule an evidentiary hearing. (*McIndoe v. Olivos, supra,* 132 Cal.App.4th 483, 487.)

Accordingly, the judgment is affirmed.

Costs on appeal awarded to respondents.

Marchiano, P. J., and Banke, J., concurred.