[No. H032107. Sixth Dist. July 17, 2008.]

FRANCISCO HERRERA, a Minor, etc., Plaintiff and Appellant, v. PONCIANO ISABEL HERNANDEZ, Defendant and Respondent.

**COUNSEL**

Law Office of Leandro H. Duran and Leandro H. Duran for Plaintiff and
Appellant.

Grunsky, Ebey, Farrar & Howell, Katherine R. Moore, Leslie J. Karst; Powers &
Miller and Robert James Miller for Defendant and Respondent.

**OPINION**

**MIHARA, Acting P. J.**—Plaintiff Francisco Herrera, by and through his
guardian ad litem Gregorio Herrera, brought a personal injury action against
defendant Ponciano Isabel Hernandez. The jury returned a verdict in favor of
defendant. On appeal, plaintiff contends that the trial court erred in denying
his motion for new trial based on juror misconduct. We hold that the
dissolution of Juror No. 8's marriage to defendant's nephew terminated her
affinity to defendant, thus precluding plaintiff's challenge for implied bias.
(Code Civ. Proc., §§ 225, 229.) Accordingly, we affirm.

## I. Statement of Facts

On February 13, 2007, the trial court and counsel conducted voir dire of
the prospective jurors. After the parties exercised their peremptory challenges,
the jury was sworn. While plaintiff's counsel was giving his opening state-
ment, Juror No. 8 recognized defendant's daughter, who was sitting in the
courtroom. Juror No. 8 then informed the trial court and counsel that her
ex-husband, whom she had divorced more than 20 years ago, was defendant's
nephew.

A hearing was then held.[1] The trial court asked Juror No. 8 a number of
questions, and allowed counsel to ask her questions. Plaintiff's counsel asked
the following questions: "MR. DURAN: Do you feel that, if you made a
decision that was adverse to Mr. Hernandez, it might affect your family

---

[1] Plaintiff has not included the reporter's transcript of the proceedings on February 13, 2007,
in the record on appeal. Thus, the facts are based on the transcript of the hearing on the motion
for new trial. During this hearing, the trial court read portions of the transcript from the
hearing on February 13, 2007.

relations[?] [¶] Answer: No. [¶] MR. DURAN: (Inaudible to court reporter.) [¶] THE COURT REPORTER: I'm sorry. I can't hear you. [¶] MR. DURAN: You will still be able to go to family functions? [¶] JUROR NO. 8: I really have nothing really to do with that side of the family anymore. [¶] MR. DURAN: Oh, I see. You are divorced. [¶] JUROR NO. 8: Right. [¶] MR. DURAN: Oh, I see." Defendant's counsel then asked Juror No. 8 whether her children had any relationship with defendant, and Juror No. 8 replied, "My son has a relationship with his dad. But I don't think he has any relationship with Mr. Hernandez." The trial court concluded that Juror No. 8 could be fair, and that there were no grounds to excuse her.

On February 22, 2007, the jury rendered a 9 to 3 verdict in favor of defendant. Juror No. 8 voted in favor of defendant.

On March 8, 2007, plaintiff filed a motion for new trial on the ground, among other things, that Juror No. 8 intentionally misrepresented her relationship to her former father-in-law. Plaintiff asserted that Juror No. 8 "was related to the defendant by consanguinity and marriage. . . . She responded to the questionnaire deceptively by denying she knew the defendant. It is not credible that one would forget one's father in law on sight or his name upon hearing it. Both facts, her relationship and intentional misrepresentation, are express bias." Though plaintiff's counsel claimed that he never had the opportunity to question Juror No. 8, the trial court corrected him by reading from the transcript of the hearing on February 13, 2007. The trial court also stated that Juror No. 8's ex-husband was defendant's nephew.[2]

Following argument by counsel, the trial court denied the motion for new trial. The trial court stated: "Well, there's no indication, whatsoever, that Juror No. 8 perjured herself or misrepresented anything, as you've alleged. There's no reason to believe that at all. As a matter of fact, the facts are that she brought this to the Court's attention immediately and did not conceal anything, that she discovered only when Mr. Hernandez's daughter came into court and sat behind him. She recognized the daughter, and she made the connection with Mr. Hernandez. She testified that she had not had anything to do with that side of the family. She said the divorce was 20-plus years ago. And she didn't recognize him. That's no reason not to believe her. If she had gone through the entire trial and seen the daughter and had not said anything, which is similar to the case that you've cited here, that would be different. There's every reason to believe that that juror wasn't being honest. [¶] . . . [¶] But I don't find any fraud in her part at all. I find her to be forthright and completely honest with that aspect of that. So, once the jury has been sworn in, I have to find whether or not she can continue on. And that's why we had that hearing. That's why I asked her questions. I let you two ask her

---

[2] Plaintiff now concedes that Juror No. 8's ex-husband was defendant's nephew.

questions. And I concluded, at that point, that she still could be fair. There was no grounds to excuse her at that point. That was my finding. I didn't find that she was biased based on her answers."

## II. Discussion

Plaintiff contends that the trial court erred in denying the motion for new trial, because Juror No. 8 concealed bias.

■ " 'Falsehood, or deliberate concealment or nondisclosure of facts and attitudes deprives both sides of the right to select an unbiased jury and erodes the basic integrity of the jury trial process.' " (*Cabe v. Superior Court* (1998) 63 Cal.App.4th 732, 741 [74 Cal.Rptr.2d 331], quoting *People v. Blackwell* (1987) 191 Cal.App.3d 925, 929 [236 Cal.Rptr. 803].) "Voir dire is the crucial means for discovery of actual or potential juror bias. Voir dire cannot serve this purpose if prospective jurors do not answer questions truthfully." (*In re Hamilton* (1999) 20 Cal.4th 273, 295 [84 Cal.Rptr.2d 403, 975 P.2d 600].) Thus, "when a juror conceals bias on voir dire, . . . the event is called juror misconduct." (*Id.* at p. 294.) "In resolving a question of whether jury misconduct occurred, we 'accept the trial court's credibility determinations and findings on questions of historical fact if supported by substantial evidence.' " (*People v. Mendoza* (2000) 24 Cal.4th 130, 195 [99 Cal.Rptr.2d 485, 6 P.3d 150], quoting *People v. Nesler* (1997) 16 Cal.4th 561, 582 [66 Cal.Rptr.2d 454, 941 P.2d 87].)

Here, the trial court found that Juror No. 8 did not conceal her relationship with defendant during voir dire, noting that the juror did not realize defendant's identity until his daughter entered the courtroom and sat behind him. Juror No. 8 then immediately informed the trial court. Since plaintiff did not provide this court with a transcript of the voir dire proceedings, we must presume that Juror No. 8's responses to the trial court's questions support this finding. (*Estate of Fain* (1999) 75 Cal.App.4th 973, 992 [89 Cal.Rptr.2d 618].) Accordingly, we reject plaintiff's claim that the juror concealed bias during the voir dire proceedings.

Relying on Code of Civil Procedure sections 225 and 229,[3] plaintiff also contends that the trial court erred in failing to discharge Juror No. 8 for implied bias. He asserts that the dissolution of Juror No. 8's marriage to defendant's nephew did not terminate her affinity to defendant, because she had a son with defendant's nephew.[4]

■ The trial court may substitute a juror if "upon . . . good cause shown to the court, [the juror] is found to be unable to perform his or her duty . . . ."

---

[3] All further statutory references are to the Code of Civil Procedure.

[4] Plaintiff has not raised any issue regarding actual bias by Juror No. 8.

(§ 233; see § 234.) A juror may be challenged for cause based on, among other things, implied bias. (§ 225.) "A challenge for implied bias may be taken for . . . : [¶] . . . [c]onsanguinity or affinity within the fourth degree to any party . . . ." (§ 229, subd. (a).) Consanguinity, that is, a relation by blood, is not at issue in the present case. "The word 'affinity,' when applied to the marriage relation, signifies the connection existing in consequence of marriage, between each of the married persons and the blood relatives of the other." (§ 17, subd. (b)(9).)

■ At issue here is whether dissolution of a marriage terminates a juror's affinity to a party where the juror has a child with his or her former spouse. In determining the intent of the legislative body, we begin with the language of the statute itself. (*Rojo v. Kliger* (1990) 52 Cal.3d 65, 73 [276 Cal.Rptr. 130, 801 P.2d 373].) We examine the words used, giving them their usual and ordinary meaning. (*City of Santa Cruz v. Municipal Court* (1989) 49 Cal.3d 74, 90 [260 Cal.Rptr. 520, 776 P.2d 222].) " 'If there is no ambiguity in the language, we presume the Legislature meant what it said and the plain meaning of the statute governs.' " (*Diamond Multimedia Systems, Inc. v. Superior Court* (1999) 19 Cal.4th 1036, 1047 [80 Cal.Rptr.2d 828, 968 P.2d 539], quoting *People v. Snook* (1997) 16 Cal.4th 1210, 1215 [69 Cal.Rptr.2d 615, 947 P.2d 808].) When the issue is the interpretation of a statute, the standard of review is de novo. (See *R & P Capital Resources, Inc. v. California State Lottery* (1995) 31 Cal.App.4th 1033, 1036 [37 Cal.Rptr.2d 436].)

■ Section 17, subdivision (b)(9) defines the term "affinity" as the "connection *existing* in consequence of marriage . . . ." (Italics added.) As the court explained in *In re Valerie A.* (2007) 152 Cal.App.4th 987, 1008 [61 Cal.Rptr.3d 403], the use of "the adjective 'existing,' which means 'existent' or 'having existence, being, or actuality,' reinforces the legislative emphasis on the present . . . . (Webster's 3d New Internat. Dict. (2002) p. 796, col. 3.)" When a marriage has been dissolved, it no longer exists, and there can be no affinity within the meaning of section 17, subdivision (b)(9). ■ Here, since Juror No. 8 was no longer married to defendant's nephew, the trial court correctly found that there was no implied bias under section 229.

■ Plaintiff relies, however, on a treatise for the proposition that "there exists 'affinity' if there are children to the former marriage." However, the cases cited in Annotation (1938) 117 A.L.R. 800 did not interpret statutes that included the same language as section 17, subdivision (b)(9). "[I]t is our role to ascertain the meaning of the words used, not to insert what has been omitted or otherwise rewrite the law to conform to an intention that has not been expressed." (*Gray Cary Ware & Freidenrich v. Vigilant Insurance Co.* (2004) 114 Cal.App.4th 1185, 1190 [8 Cal.Rptr.3d 475].) Here, the Legislature could have inserted language referring to the children of the former

marriage in its definition of affinity. Since the Legislature did not employ such language, this court will not rewrite the statute.

### III. Disposition

The judgment is affirmed. Defendant shall recover his costs on appeal.

McAdams, J., and Duffy, J., concurred.

Appellant's petition for review by the Supreme Court was denied October 1, 2008, S166352. Kennard, J., did not participate therein.