Filed 4/3/15  Sanchez v. Sanchez CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| ALBERT SANCHEZ, SR., et al., | D063615 |
| Plaintiffs and Appellants, | |
| v. | (Super. Ct. No. 37-2010-00102792-CU-BT-CTL, consolidated with 37-2010-00103323-CU-FR-CTL) |
| ALBERT SANCHEZ, JR., et al., | |
| Defendants and Respondents. | |

APPEAL from judgments of the Superior Court of San Diego County, Lorna A. Alksne, Judge.  Dismissed in part, affirmed in part.

Mirch Law Firm, Kevin J. Mirch, Marie C. Mirch and Erin E. Hanson for Plaintiffs and Appellants.

Teeple Hall and Grant G. Teeple for Defendants and Respondents.

Plaintiffs Albert Sanchez, Sr. (Sanchez, Sr.) and Advanced Medicine and Research Center, Inc. (AMARC) appeal from judgments in two consolidated cases in favor of defendants Albert Sanchez, Jr. (Sanchez, Jr.); Linda Schrader; Ed Sanchez; AMARC

Enterprises, Inc.; Scaffold Solutions, Inc. (together, Defendants); and Tina Gomez (Gomez).[1] Sanchez, Sr., and AMARC (together, Plaintiffs) contend the trial court erred in denying their motion for a new trial and in dismissing one of the causes of action with, as opposed to without, prejudice. We will dismiss AMARC's appeal and otherwise affirm the judgments.

## I.

## AMARC'S APPEAL IS DISMISSED

Immediately preceding and at oral argument, both counsel made representations to the court concerning the suspension of AMARC's corporate powers, rights and privileges in 2001; AMARC's potential lack of standing; and AMARC's current attempt to revive its corporate status. (See Rev. & Tax. Code, § 23301 et seq.) Following oral argument, we issued an order to show cause why AMARC's appeal should not be dismissed. (*Bourhis v. Lord* (2013) 56 Cal.4th 320, 324 [" 'a corporation may not . . . appeal from an adverse judgment in an action while its corporate rights are suspended for failure to pay taxes' "].) AMARC failed to respond. Accordingly, AMARC's appeal is hereby dismissed.

## II.

## SANCHEZ, SR.'S BURDENS ON APPEAL

A fundamental rule of appellate review is that an appealed judgment is presumed correct. (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564 (*Denham*).) " 'All

---

[1]    There are additional defendants and at least one additional judgment that are not part of the present appeal.

intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown.' " (*Ibid*.; see *In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1133 [because judgment presumed correct, "all intendments and presumptions are indulged in favor of its correctness"].)

To overcome this presumption, "a party challenging a judgment has the burden of showing reversible error by an adequate record." (*Ballard v. Uribe* (1986) 41 Cal.3d 564, 574 (*Ballard*); see *Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1140-1141.) Where the appellant fails to provide an adequate record of the challenged proceedings, we must presume that the appealed judgment or order is correct and, on that basis, affirm. (*Maria P. v. Riles* (1987) 43 Cal.3d 1281, 1295-1296; see *Gee v. American Realty & Construction, Inc*. (2002) 99 Cal.App.4th 1412, 1416 [" 'if the record is inadequate for meaningful review, the appellant defaults and the decision of the trial court should be affirmed' "]; *Hernandez v. California Hospital Medical Center* (2000) 78 Cal.App.4th 498, 502 (*Hernandez*) ["Failure to provide an adequate record on an issue requires that the issue be resolved against [appellant]."].)

The record on appeal in this case consists of a six-volume, 1,479-page clerk's transcript; a two-volume, 512-page augmented clerk's transcript; and a one-volume, 26-page further augmentation of the clerk's transcript, which Sanchez, Sr., refers to as the "appendix." The vast majority of the more than 2,000 pages of Sanchez, Sr.'s record have to do with *pretrial* proceedings (motions and amended complaints) that are irrelevant to the *trial* and *posttrial* issues on appeal (grant of a directed verdict, denial of a motion for new trial).

3

Sanchez, Sr., has not provided a reporter's transcript. Nor has he made arrangements for us to receive more than three of what he describes as the "[o]ver 350 trial exhibits." (Cal. Rules of Court, rule 8.224.)[2]

In the briefing, an appellant must provide citations to the record for purposes of directing the court to the pertinent evidence or other matters that demonstrate reversible error. (Rule 8.204(a)(1)(C); *City of Lincoln v. Barringer* (2002) 102 Cal.App.4th 1211, 1239 (*City of Lincoln*).) We are not responsible to search the appellate record for facts to support the contentions on appeal. (*Del Real v. City of Riverside* (2002) 95 Cal.App.4th 761, 768 (*Del Real*); *Annod Corp. v. Hamilton & Samuels* (2002) 100 Cal.App.4th 1286, 1301 (*Annod Corp.*) ["We are not required to do an unassisted review of the record . . . ."].) An appellant that fails to cite accurately to the record forfeits the issue or argument on appeal that is presented without the record reference. (*City of Lincoln*, at p. 1239; *Del Real*, at p. 768; *Annod Corp.*, at p. 1301.)

Likewise, an appellate brief must "support each point by argument and, if possible, by citation of authority." (Rule 8.204(a)(1)(B).) Where a party fails to cite authority or present argument, the party forfeits the issue on appeal. (*Estate of Cairns* (2010) 188 Cal.App.4th 937, 949 (*Cairns*).)

---

2      All further rule references are to the California Rules of Court unless indicated otherwise.

Due to the limited record and briefing deficiencies,[3] our ability to provide detailed background or to reach the merits of some of Sanchez, Sr.'s arguments is restricted accordingly.

III.

BACKGROUND FACTS AND PROCEDURE[4]

Sanchez, Sr., tells us that he is the father of his adult children Sanchez, Jr., Ed Sanchez and Linda Schrader, and Defendants do not dispute this statement in their brief. Sanchez, Sr., contends that these three siblings took advantage of him, purportedly causing Plaintiffs considerable financial loss. These allegations are contained in separate complaints originally filed as separate actions. By the time of trial, Plaintiffs appear to have asserted 27 causes of action in 344 numbered paragraphs in one case and five causes of action in 124 numbered paragraphs in the second case. The cases appear to have been consolidated, but Sanchez, Sr., does not advise how or when this happened; and the most recently filed complaint in the record contains the caption of the consolidated actions, yet indicates there are still separate complaints in each of the two consolidated actions.

Following a series of partially successful demurrers, motions to strike, motions for summary adjudication and motions for summary judgment, the consolidated cases went

---

[3] Instead of striking Sanchez, Sr.'s briefs, we have chosen to disregard defects and consider only those portions that are properly prepared. (Rule 8.204(e)(2)(C).)

[4] Because Sanchez, Sr., has not provided a reporter's trial transcript from which we could have better understood the facts and evidence, we will rely in part on unchallenged noncontroversial statements in Sanchez, Sr.'s opening brief and in part on the allegations in the most recently filed complaints in the record — not necessarily to evidence.

to trial on the remaining causes of action. Without supporting authority, Sanchez, Sr., tells us "[t]he case was tried before a jury from August 28, 2013 to October 1, 2012."[5] At trial, following partially successful motions for nonsuit and a directed verdict — including, as relevant to this appeal, the motion for directed verdict brought by Sanchez, Jr., and Ed Sanchez as to the cause of action for "conversion of cash proceeds from 97 lots in Colorado" (capitalization omitted) — the jury found in favor of Defendants and against Plaintiffs in 33 separate special verdict forms. With no record reference, Defendants tell us repeatedly the jury verdicts were unanimous, and Sanchez, Sr., does not contend otherwise in his reply brief.

Plaintiffs filed a notice of intention to move for a new trial. In support, Plaintiffs filed a combined motion and memorandum of points and authorities and the declarations of Lorraine Pacheco, an alternate juror who did not participate in the deliberations, and Kevin Mirch, one of Plaintiffs' attorneys. Plaintiffs (1) described a number of separate instances of alleged juror misconduct; (2) argued that because the evidence overwhelmingly supported Plaintiffs' case, the defense verdicts were not supported by the evidence; and (3) suggested that the court's handling of trial exhibits and the jury's consideration of the burdens of proof were irregular. Defendants filed written opposition; four declarations, including one from presiding juror J. Richard Knaggs; and evidentiary

---

5    We assume Sanchez, Sr., meant "2012" as the year for the August commencement date. We suspect the "October 1" date is also incorrect, since the court's minutes and many of the special verdict forms indicate the jury returned its verdict on *October 2*. Defendants advise, also without supporting authority, that the trial lasted five weeks.

objections to the declarations of Pacheco and Mirch. Plaintiffs filed a reply and evidentiary objections to the Knaggs declaration. When we discuss the various arguments, *post*, we will add additional facts as necessary.

Following hearing, the court ruled on the parties' evidentiary objections and denied the motion for a new trial.

The court entered judgments in favor of Defendants and Gomez on January 9, 2013, and another judgment in favor of other defendants on January 15, 2013. The prevailing parties gave notice of entry of the January 9 judgments, and Sanchez, Sr., timely appealed from the January 9 judgments.[6] The January 15, 2013 judgment is not part of this appeal.

## IV.

## DISCUSSION

As part of the motion for a new trial, Plaintiffs gave notice of three alleged grounds for relief: (1) multiple instances of juror misconduct, (2) insufficiency of the evidence and (3) irregularity of the proceedings. Sanchez, Sr., renews these arguments in this appeal. In addition, Sanchez, Sr., argues that the dismissal of his claim for "conversion of cash proceeds from 97 lots in Colorado" should have been *without*

---

[6] The notice of appeal identifies both judgments entered on "1/9/13" — one in favor of Defendants, and one in favor of Gomez. The court ruled in favor of Gomez during pretrial motion proceedings — i.e., Plaintiffs' claims against Gomez did not go the jury. Because Sanchez, Sr., does not assert any arguments related to the pretrial proceedings generally or to Gomez specifically, Sanchez, Sr., has forfeited any appellate review of the judgment in favor of Gomez. (See *Kelly v. CB&I Constructors, Inc.* (2009) 179 Cal.App.4th 442, 452.)

7

prejudice following a directed verdict.  Sanchez, Sr., has failed to meet his burden of establishing reversible error.

A.      *Sanchez, Sr., Has Not Established Reversible Error in the Denial of the Motion for New Trial*

After entry of the jury's verdicts and before entry of judgment, Plaintiffs filed a motion for a new trial under Code of Civil Procedure section 657.  Plaintiffs sought relief pursuant to section 657, subdivisions 1, 2 and 6, which provide as follows:

> "The verdict may be vacated and any other decision may be modified or vacated, in whole or in part, and a new or further trial granted on all or part of the issues, on the application of the party aggrieved, for any of the following causes, materially affecting the substantial rights of such party:

> "1.  Irregularity in the proceedings of the court, jury or adverse party, or any order of the court or abuse of discretion by which either party was prevented from having a fair trial.

> "2.  Misconduct of the jury . . . .  [¶]  . . .  [¶]

> "6. Insufficiency of the evidence to justify the verdict or other decision, or the verdict or other decision is against law."  (*Ibid*.)

Subject to nuances discussed *post*, "a trial judge is accorded a wide discretion in ruling on a motion for new trial and . . . the exercise of this discretion is given great deference on appeal."  (*City of Los Angeles v. Decker* (1977) 18 Cal.3d 860, 871-872.)  An abuse of discretion occurs if, in light of the applicable law and considering all of the relevant circumstances, the court's decision exceeds the bounds of reason and results in a miscarriage of justice.  (*Shamblin v. Brattain* (1988) 44 Cal.3d 474, 478-479 [relief from default]; *Denham*, *supra*, 2 Cal.3d at p. 566 [failure to timely bring case to trial].)

8

1.      *The Purported Juror Misconduct Does Not Require Reversal*

Sanchez, Sr., describes a number of instances of what he contends amount to juror misconduct entitling him to a new trial.  (Code Civ. Proc., § 657, subd. 2.)

Where, as here, the alleged juror misconduct is not discovered until after a verdict has been rendered, the sole remedy available in the trial court is a motion for new trial. In ruling on a motion for a new trial based upon juror misconduct, the court must undertake a three-step inquiry to determine:  (1) whether the evidence of misconduct is admissible; (2) whether the admissible facts establish misconduct; and (3) whether the misconduct is prejudicial.[7]  (*Barboni v. Tuomi* (2012) 210 Cal.App.4th 340, 345 (*Barboni*).)  On appeal, we review each of these determinations as appropriate.

In determining whether the evidence in support of the motion is admissible, we are guided by Evidence Code section 1150, subdivision (a), which provides:

> "Upon an inquiry as to the validity of a verdict, any otherwise admissible evidence may be received as to statements made, or conduct, conditions, or events occurring, either within or without the jury room, of such a character as is likely to have influenced the verdict improperly.  No evidence is admissible to show the effect of such statement, conduct, condition, or

---

[7]     Sanchez, Sr., also argues the court erred by not conducting an evidentiary hearing at which the jurors were questioned.  Sanchez, Sr., has forfeited this argument.  First, he failed to raise it in the trial court.  (*Premier Medical Management Systems, Inc. v. California Ins. Guarantee Assn*. (2008) 163 Cal.App.4th 550, 564 ["Failure to raise specific challenges in the trial court forfeits the claim on appeal."].)  Second, although trial courts have discretion whether to hold an evidentiary hearing when juror misconduct is alleged (*People v. Dykes* (2009) 46 Cal.4th 731, 810-811), Sanchez, Sr., has not attempted to establish either the trial court's abuse of discretion or how he was prejudiced by the lack of an evidentiary hearing.  (Rule 8.204(a)(1)(B); *Cairns*, *supra*, 188 Cal.App.4th at p. 949 [party forfeits argument by failing to cite authority or present argument].)

> event upon a juror either in influencing him to assent to or dissent from the verdict or concerning the mental processes by which it was determined."

Like most rulings on the admissibility of evidence, we review the trial court's evidentiary rulings on the declaration testimony for an abuse of discretion. (*Barboni*, *supra*, 210 Cal.App.4th at p. 345.) In determining whether the admissible facts establish juror misconduct, we review the trial court's findings regarding misconduct (including credibility determinations) for substantial evidence. (*Ibid*.) Finally, a showing of misconduct creates a presumption of prejudice, which may be rebutted by an evidentiary showing that prejudice does not exist based on a consideration of such factors as " ' "the strength of the evidence that misconduct occurred, the nature and seriousness of the misconduct, and the probability that actual prejudice may have ensued." ' " (*Whitlock v. Foster Wheeler, LLC* (2008) 160 Cal.App.4th 149, 162.) In determining whether the juror misconduct was prejudicial following the denial of a motion for new trial, "an appellate court has the obligation to review 'the entire record, including the evidence, so as to make an independent determination whether the error was prejudicial.' " (*Hasson v. Ford Motor Co.* (1982) 32 Cal.3d 388, 417, fn. 10; see Cal. Const., art. VI, § 13; Code Civ. Proc., § 475; *People v. Nesler* (1997) 16 Cal.4th 561, 582 (lead opn. of George, C.J.) [whether prejudice arose from juror misconduct "is a mixed question of law and fact subject to an appellate court's independent determination," although we "accept the trial court's credibility determinations and findings on questions of historical fact if supported by substantial evidence"]; *Barboni*, at p. 345.)

10

In this latter regard — i.e., actual prejudice — the parties dispute whether Sanchez, Sr., must establish prejudice or whether Defendants have to rebut the presumption of prejudice. Because we have determined that Sanchez, Sr., has not met his burden of establishing juror misconduct (the second inquiry), we have no occasion to reach the prejudice issue (the third inquiry) in this appeal.

Sanchez, Sr., submitted the declaration of Pacheco, the fourth alternate juror who did not participate during deliberations, and Mirch, Plaintiffs' lead trial counsel. Defendants submitted declarations from Knaggs, the presiding juror; Sanchez, Jr., one of the Defendants and a witness to events described in Pacheco's declaration; Rebecca Taylor, a witness to events described in Pacheco's declaration; and Zachariah R. Tomlin, one of Defendants' attorneys who attended trial. The court sustained Defendants' evidentiary objection Nos. 1 to 26 to the Pacheco declaration and objection Nos. 27 to 29 to the Mirch declaration, which left Sanchez, Sr., with little substantive evidence in support of the motion. The court overruled Sanchez, Sr.'s evidentiary objections to the Knaggs declaration, because Sanchez, Sr., had presented "multiple objections" to "entire paragraphs," leaving the court unable to determine which objections applied to which specific statements.[8]

---

[8] In his reply brief, Sanchez, Sr., accuses the trial court of having "exhibited extreme bias when it sustained all but one of [Defendants'] objections to the declarations of Ms. Pacheco and Mr. Mirch, and overruled the same objections that [Plaintiffs] made to the declaration of Richard Knaggs." We take a claim of judicial bias seriously. Given that Sanchez, Sr., states nothing further about bias and given that the two sets of objections are *not* "the same" — in particular, only Plaintiffs presented multiple

11

We have considered each alleged incident of juror misconduct under the three-step inquiry described *ante*. Significantly, for purposes of this opinion, we have assumed that all of Pacheco's testimony *was* admissible;[9] thus, the substantive analyses begin with the second inquiry — namely, whether the admissible facts establish misconduct. We have tried to group together the alleged incidents based on the headings and presentation in Sanchez, Sr.'s opening brief.

a. *Concealing Bias During Voir Dire*

Sanchez, Sr., contends Juror No. 2 (M.H.) failed to disclose the following during voir dire: (1) "an irrefutable bias toward the Plaintiff's [*sic*] attorney," Mirch;[10] (2) he would not use his prior legal knowledge in reaching a verdict; and (3) someone in his family had experienced something similar to what Plaintiffs experienced. In support of these contentions, Pacheco testified: (1) during the trial, Pacheco saw M.H. squirm when Mirch questioned witnesses, and at one point Pacheco saw M.H. write in his personal notebook, " 'Mirch is scum' "; (2) in a telephone conversation during deliberations, Juror No. 8 told Pacheco that M.H. told the jurors that he had a law background, yet during voir dire Pacheco recalled the court instructing the jurors not to use their backgrounds

objections to multiple statements — we will assume Sanchez, Sr.'s advocacy has merely expanded into unnecessary rhetoric and hyperbole.

[9] Our assumption is solely for the purposes of this written decision. We neither decide nor express an opinion as to the merits of the trial court's rulings sustaining Defendants' objections to Pacheco's testimony. We will not repeat this statement each time we consider Pacheco's testimony.

[10] We assume Sanchez, Sr., means that M.H. had a bias *against* Plaintiffs' counsel.

12

while deliberating;[11] and (3) after the jury had decided the case but before the verdicts were read, Juror No. 8 told Pacheco that during deliberations an unidentified juror (whom *Pacheco* believed was M.H.) told the other jurors "that his parents or someone he knew had a similar experience as in this case."

The first alleged incident has nothing to do with nondisclosures during voir dire, since Pacheco's testimony refers to a purported opinion M.H. reached *during* the trial. Sanchez, Sr., also packages his bias argument as M.H.'s failure to follow jury instructions, since the court allegedly instructed the jurors to base their verdict "only on admitted evidence" and not "on bias against any party." However, we must resolve this issue against Sanchez, Sr., due to his failure to have provided a sufficient record on appeal — i.e., by not including the jury instructions. (*Ballard*, *supra*, 41 Cal.3d at p. 574; *Hernandez*, *supra*, 78 Cal.App.4th at p. 502.) For example, although Sanchez, Sr., cites to CACI No. 113, which is entitled "Bias," we have no way of knowing whether it was given and, if so, how it was modified, since the CACI form contains choices.[12] Finally,

---

11    Pacheco also testified that, after the jury had decided the case but before the verdicts were read, Juror No. 8 again mentioned that another juror knew a lot about the law; however, Juror No. 8 did not identify the other juror.

12    In any event, CACI No. 113 only refers to bias "in favor of or against any party or witness because of his or her disability, gender, race, religion, ethnicity, sexual orientation, age, national origin, [or] socioeconomic status"; yet the statement " 'Mirch is scum' " does not reflect bias against "any party or witness," and is not based on "disability, gender, race, religion, ethnicity, sexual orientation, age, national origin, [or] socioeconomic status." (*Ibid*.)

even crediting Pacheco's understanding of what M.H. had written in his personal notes,[13] there is no bias. We know that where "negative attitudes [are] based solely on the evidence in the case," they are not considered "the product of bias" for purposes of juror misconduct. (*Enyart v. City of Los Angeles* (1999) 76 Cal.App.4th 499, 511.) The result is no different where the purported negative attitude is based on an attorney's demeanor and behavior during the presentation of evidence in the case.

Neither of the remaining two alleged incidents establishes misconduct, again because we do not know what was asked of M.H. or what he said during voir dire. "[W]here, as here, it is claimed a juror made false answers [or concealed information] on *voir dire* examination, the question can be resolved only by an examination of the stenographic report of the *voir dire* proceedings." (*Dunford v. General Water Heater Corp.* (1957) 150 Cal.App.2d 260, 264.) We agree with the courts that have rejected juror misconduct claims predicated on concealed bias where an appellant fails to provide a transcript of the voir dire proceedings. (*Ballard*, *supra*, 41 Cal.3d at p. 574; *Herrera v. Hernandez* (2008) 164 Cal.App.4th 1386, 1390.)

---

13     Pacheco also testified that she observed M.H. write in his personal notes " 'Where is the promissory note?' " In the same section of his brief (although not having to do with bias), Sanchez, Sr., contends that M.H. failed to follow "instructions which stated an oral loan or contract was proper." Again, without a transcript of the instructions, we must resolve this issue against Sanchez, Sr. (*Ballard*, *supra*, 41 Cal.3d at p. 574; *Hernandez*, *supra*, 78 Cal.App.4th at p. 502.) In any event, Sanchez, Sr.'s conclusion (that M.H. did not follow instructions) does not follow from the predicate (that M.H. wrote a note to himself during the trial, presumably before instructions, questioning the existence of a promissory note).

b.      *Unauthorized Communications*

i.      *September 29, 2012 — Telephone Call and*

*October 2, 2012 — Lunch*

Pacheco testified that Juror No. 8 told Pacheco as follows in a September 29, 2012 telephone conversation over a weekend during the jury's deliberations:  (1) when the jury first retired, the jurors were "close to half and half" in favor of the respective sides; (2) the jury then reached verdicts in "about a third" of the claims; (3) M.H. told the other jurors "that [he] had a law background"; (4) a female juror ("maybe [J]uror [No.] 6") said "she knew how to read documents"; (5) how "amaz[ed]" she was that "different jurors didn't believe certain witnesses"; and (6) she changed her mind about one witness she originally thought was credible.

Pacheco also testified that, on October 2, 2012 (after the jury had reached its verdicts, but before they were read), she had lunch with two jurors, including Juror No. 2, during which:  (1) Juror No. 2 told Pacheco "there was a juror who knew a lot about the law" (but did not identify the juror); and (2) the other juror said she "felt torn" over the verdicts.

Arguing that such communications are misconduct as a matter of law, Sanchez, Sr., contends that Juror No. 8's communications "w[ere] in violation of the court's strict admonitions, including those in CACI [No. ]100 and CACI [No. ]5000."[14] However, because Sanchez, Sr., has not provided a record on appeal that contains the

---

[14]    CACI No. 100 is entitled and deals with "Preliminary Admonitions," and CACI No. 5000 is entitled and deals with "Duties of the Judge and Jury."

15

instructions actually given to the jury, we must resolve this issue against him.  (*Ballard*, *supra*, 41 Cal.3d at p. 574; *Hernandez*, *supra*, 78 Cal.App.4th at p. 502.)[15]

To the extent Sanchez, Sr., implies that we can assume certain basic instructions or admonitions were given, we disagree and will not do so.  " ' " 'In a civil case, each of the parties must propose complete and comprehensive instructions . . . ; if the parties do not do so, the court has no duty to instruct on its own motion.' " ' "  (*Metcalf v. County of San Joaquin* (2008) 42 Cal.4th 1121, 1130-1131; see *Maureen K. v. Tuschka* (2013) 215 Cal.App.4th 519, 526 ["The trial court has no duty to instruct on its own motion . . . ."].)  Sanchez, Sr.'s failure to have provided a record from which we can determine the court's admonitions to the jury is fatal to his argument.

### ii.     *October 2, 2012 — Hallway*

Pacheco testified that while all the jurors were waiting in the hallway after lunch and prior to formally returning the verdicts, there were two instances of what Sanchez, Sr., characterizes as unauthorized communications:  (1) a juror whose name and number Pacheco did not know told her she "might not have wanted to return if [she] knew what was," because " 'there wasn't enough evidence; what can you do?' "; and

---

15     In any event, with regard to certain jurors' alleged knowledge (law) and experience (reading documents), because "we allow jurors with specialized knowledge to sit on a jury, . . . we must allow those jurors to use their experience in evaluating and interpreting that evidence." (*People v. Steele* (2002) 27 Cal.4th 1230, 1266 [during deliberations, two jurors with medical experience told the others that "based on 'what they have learned in their own experience in the medical field' " certain evidence at trial "was 'inadequate' " to establish the validity of a brain electrical activity mapping test].)

(2) Sanchez, Jr., "walked quickly past" Pacheco, asking her if the other jurors had told her the verdict.

With regard to the testimony described at (1), *ante*, Sanchez, Sr.'s argument is that Pacheco's testimony established that Juror No. 8's communications "w[ere] in violation of the court's strict admonitions, including those in CACI [No. ]100 and CACI [No. ]5000." Again, however, because Sanchez, Sr., has not provided a record on appeal that contains the instructions actually given to the jury, we must resolve this issue against him. (*Ballard*, *supra*, 41 Cal.3d at p. 574; *Hernandez*, *supra*, 78 Cal.App.4th at p. 502.)

With regard to the testimony described at (2), *ante*, Sanchez, Jr., denied making the statement Pacheco attributed to him and testified that he asked her only "if she knew if they had started yet"; and Taylor confirmed Sanchez, Jr.'s recollection of the events in her declaration. Thus, crediting Sanchez, Jr.'s version of the events, substantial evidence supports the related conclusion that no misconduct occurred. (*Barboni*, *supra*, 210 Cal.App.4th at p. 345 [in determining whether the admissible facts establish juror misconduct, we review the trial court's findings regarding misconduct (including credibility determinations) for substantial evidence].)[16] To the extent Sanchez, Sr.,

---

[16]    Defendants objected to the admission of Pacheco's testimony based on relevance, lack of foundation and personal knowledge, and juror's mental process. The court sustained the objection in its entirety, yet on appeal Sanchez, Sr., argues error only as to the second two objections. By not challenging the court's ruling based on relevance, Sanchez, Sr., has forfeited his argument as to the admissibility of the statement. (Rule 8.204(a)(1)(B); *Cairns*, *supra*, 188 Cal.App.4th at p. 949.) In any event, the court did not abuse its discretion in rejecting this evidence. Sanchez, Jr.'s quick walk past Pacheco and alleged question to Pacheco whether anyone had told her the verdict *are* irrelevant to juror misconduct and to any other issue in the motion for new trial.

17

argues that, as a defendant, Sanchez, Jr., should not have initiated any contact with Pacheco, Sanchez, Sr., has forfeited this argument by not providing any authority in support. (Rule 8.204(a)(1)(B); *Cairns*, *supra*, 188 Cal.App.4th at p. 949.) In any event, Sanchez, Jr., and his companion were too late to court to hear the verdicts, and none of the other jurors were in the hallway. Asking Pacheco whether she knew if court was in session — knowing that the jury had reached it verdicts, but not seeing any of the jurors — is hardly a basis for granting a new trial.

### iii. *October 2, 2012 — Courtroom*

Pacheco testified that in the afternoon of the day on which the jury reached its verdicts, after the jury was seated and either "before the beginning of the reading of the verdict[s], or . . . during the first few pages of the 33 pages," on the back of one of one of the pages "on his blue court document packet," Knaggs wrote and showed Pacheco " '11-1 or 12-0 for the Def.' " Sanchez, Sr., contends that this communication is evidence of misconduct.

Knaggs disagreed with Pacheco's description of the events, testifying instead: "*After* the reading of the verdict on [the] first of the 33 actions [*sic*], . . . I wrote on the back of my copies that the vote *on that particular verdict form* had been either 11-1 or 12-0 . . . . I did not indicate or share our findings with Ms. Pacheco until *after* the individual action verdict(s) had been read by the Clerk." (Italics added.) Somewhat consistently, Pacheco testified: "I cannot remember if he [Knaggs] shared that [' "11-1 or 12-0 for the Def" '] with me before the beginning of the reading of the verdict . . . ."

18

Substantial evidence supports Knaggs's version of the events and, thus, the court's related conclusion that no juror misconduct occurred.[17] (*Barboni*, *supra*, 210 Cal.App.4th at p. 345 [in determining whether the admissible facts establish juror misconduct, we review the trial court's findings regarding misconduct (including credibility determinations) for substantial evidence].)

iv. *After Opening Statement — Hallway*

Pacheco testified that, during a break after Mirch had delivered his opening statement: (1) "about 4 jurors" were discussing how Mirch had "misspell[ed] . . . the word 'paid' "; and (2) one of those jurors asked Pacheco what she thought about the misspelled word, suggesting that as a teacher she would be " 'bother[ed],' " but Pacheco just "got up and walked away."

The jurors' comments about Mirch's spelling are not evidence of juror misconduct. This evidence does not reflect bias against any party or witness and is not based on disability, gender, race, religion, ethnicity, sexual orientation, age, national origin, or socioeconomic status. (See pt. IV.A.1.a. & fn. 12, *ante*.) Although Sanchez, Sr., contends that the jurors' purported "dislike for [Plaintiffs'] counsel" "created a bias against Plaintiff[s]," Sanchez, Sr., presents *no* evidence of any juror's bias against any

---

17 Although Sanchez, Sr., states that Pacheco's version of the facts also establishes "concealment of bias during voir dire," he does nothing further to develop the argument. Without a reporter's transcript of what was said during voir dire, we must resolve this issue against Sanchez, Sr. (*Ballard*, *supra*, 41 Cal.3d at p. 574; *Hernandez*, *supra*, 78 Cal.App.4th at p. 502.) Additionally, without having developed the argument, Sanchez, Sr., has forfeited appellate review of the issue. (Rule 8.204(a)(1)(B); *Cairns*, *supra*, 188 Cal.App.4th at p. 949.) (See pt. IV.A.1.a., *ante*.)

19

party.[18]  Further, Sanchez, Sr., presents no authority for the proposition that the right to an unbiased jury includes the requirement that jurors like counsel.

Sanchez, Sr., next argues that the alleged comments violated the "admonition not to discuss case [*sic*] until case submitted for deliberation."  However, because Sanchez, Sr., has not provided a record on appeal that contains the admonition(s) actually given to the jury, we must resolve this issue against him.  (*Ballard*, *supra*, 41 Cal.3d at p. 574; *Hernandez*, *supra*, 78 Cal.App.4th at p. 502.)

### c.  *Conclusion*

Sanchez, Sr., has not met his burden of establishing that the trial court abused its discretion in denying the motion for new trial based on alleged juror misconduct.

### 2.  *Without a Reporter's Transcript, Sanchez, Sr., Cannot Establish a Lack of Substantial Evidence to Support the Verdicts*

Sanchez, Sr., argues that, based on the "literally thousands of pages of written evidence and a number of witnesses justifying a verdict in [Plaintiffs'] favor," the jury's defense verdict is not supported by substantial evidence.  (Code Civ. Proc., § 657, subd. 6.)  We review a motion for new trial predicated on the insufficiency of the evidence to support a verdict for an abuse of discretion, which an appellant must affirmatively show.  (*Windeler v. Scheers Jewelers* (1970) 8 Cal.App.3d 844, 852.)

Initially, "the test is *not* the presence or absence of a substantial conflict in the evidence.  Rather, it is simply whether there is substantial evidence in favor of the

---

[18]     Indeed, we are not convinced that the jurors' comments about counsel's spelling, even if credited, reflect a dislike of counsel.

respondent. If this 'substantial' evidence is present, no matter how slight it may appear in comparison with the contradictory evidence, the judgment must be upheld." (*Howard v. Owens Corning* (1999) 72 Cal.App.4th 621, 631.) The fact that the record may contain substantial evidence in support of an appellant's claims is irrelevant to our role on appeal, which is limited to determination of the sufficiency of the evidence *in support of the judgment actually made*. (*Ibid.*) The testimony of a single witness, including that of a party, may be sufficient (*In re Marriage of Mix* (1975) 14 Cal.3d 604, 614; Evid. Code, § 411); whereas even uncontradicted evidence in favor of an appellant does not establish the fact for which the evidence was submitted (*Foreman & Clark Corp. v. Fallon* (1971) 3 Cal.3d 875, 890).

In any event, however, here we are unable to review the record to determine whether the trial court abused its discretion, because Sanchez, Sr.'s failure to have provided a reporter's transcript is fatal to his substantial evidence argument:

> "Where no reporter's transcript has been provided and no error is apparent on the face of the existing appellate record, the judgment must be *conclusively presumed correct* as to *all evidentiary matters.* To put it another way, it is presumed that the unreported trial testimony would demonstrate the absence of error. [Citation.] The effect of this rule is that an appellant who attacks a judgment but supplies no reporter's transcript will be precluded from raising an argument as to the sufficiency of the evidence." (*In re Estate of Fain* (1999) 75 Cal.App.4th 973, 992.)

Accordingly, Sanchez, Sr., has not met his burden of establishing an abuse of discretion in denying a new trial based on a lack of substantial evidence to support the verdict.

21

3. *The Purported Irregularities in the Proceedings Do Not Require Reversal*

Sanchez, Sr., contends that certain irregularities in the proceedings should have resulted in a new trial.  (Code Civ. Proc., § 657, subd. 1.)  Sanchez, Sr., raises three arguments:  (a) during trial, the clerk mishandled the trial exhibits; (b) on appeal, during preparation of the clerk's transcript, the clerk omitted certain documents, and "a substantial number of document[s] were missing" from the trial court's files; and (c) at trial, "the jury deliberated under the wrong standard of proof."  We review the court's order denying the new trial on this ground for an abuse of discretion, mindful that the trial court " ' "having heard and seen the witnesses, and having knowledge of circumstances which may not be reproduced in the record — is in a better position than the appellate court to determine the effect [of the alleged irregularity]." ' "  (*Grant v. F.P. Lathrop Construction Co.* (1978) 81 Cal.App.3d 790, 804.)

a. *During Trial — Mishandling Trial Exhibits*

Sanchez, Sr., relates a number of alleged incidents dealing with trial exhibits. They include: "many [a]dmitted [e]xhibits were not given to the jury during their deliberations"; "the jury requested the admitted exhibits and were not provided such"; "there are many exhibits from the stipulated list [of admissible exhibits] that are not marked as admitted"; "there were 164 exhibits that the parties had stipulated to admit, but the clerk did not provide them to the jury"; on one afternoon during deliberations, "the jury deliberated without Plaintiffs' most significant exhibit, exhibit 147"; the "clerk did not keep an accurate record of the exhibits admitted during trial"; "Plaintiff's [*sic*] attorney found many exhibits that were admitted but were not included in the [c]ourt's

22

notes"; and after trial, "[t]he clerk informed counsel that the exhibits had been destroyed." We find no error.

### i.    *Sanchez, Sr.'s Inadequate Presentation*

Except for issues related to trial exhibit 147 and the parties' joint trial exhibit list (which we discuss at pts. IV.A.3.a.ii. & iii., *post*), on at least three procedural grounds Sanchez, Sr., is not entitled to relief.

First, in support of their trial court presentation regarding irregularities in the proceedings, Plaintiffs mentioned *only* that the jury deliberated without exhibit 147 for one day and that the clerk's "notes" did not include all of the exhibits that should have been admitted into evidence based on the parties' joint trial exhibit list.  In this regard,

> " ' "a reviewing court will ordinarily not consider claims made for the first time on appeal which could have been but were not presented to the trial court."  Thus, "we ignore arguments, authority, and facts not presented and litigated in the trial court.  Generally, issues raised for the first time on appeal which were not litigated in the trial court are waived." ' "  (*Bank of America, N.A. v. Roberts* (2013) 217 Cal.App.4th 1386, 1398-1399; see *In re Marriage of Eben-King & King* (2000) 80 Cal.App.4th 92, 117 ["A party who fails to raise an issue in the trial court has therefore waived the right to do so on appeal."].)

Accordingly, Sanchez, Sr., has forfeited appellate review of the other above-described examples of purported irregularities related to trial exhibits.

Second, in his appellate presentation regarding irregularities in the proceedings, Sanchez, Sr., provided record references only to exhibit 147 and the parties' joint trial exhibit list.  For this reason, Sanchez has forfeited appellate review of the other alleged incidents related to the trial exhibits.  (Rule 8.204(a)(1)(C); *City of Lincoln*, *supra*, 102

23

Cal.App.4th at p. 1239; *Del Real*, *supra*, 95 Cal.App.4th at p. 768; *Annod Corp.*, *supra*, 100 Cal.App.4th at p. 1301.)

Finally, the record on appeal provided by Sanchez, Sr., is inadequate to allow us to review the alleged irregularities (other than those with regard to exhibit 147 and the parties' joint trial exhibit list). As the "party challenging a judgment," of course, Sanchez, Sr., has "the burden of showing reversible error by an adequate record." (*Ballard*, *supra*, 41 Cal.3d at p. 574.) Not having done so, Sanchez, Sr., cannot meet his burden, and thus we resolve the issues against him. (*Hernandez*, *supra*, 78 Cal.App.4th at p. 502.)

### ii. *Trial Exhibit 147*

Based on certain court minutes, we know that during the afternoon of Friday, September 28, 2012, the jury was not allowed to view exhibit 147 while " '*a determination is made concerning admission of exhibit #147*.' " We also know that on the following morning of deliberations, at 9:30 a.m. on Monday, October 1, 2012, the court determined that exhibit 147 had been admitted into evidence and then provided the exhibit to the jury.[19]

These facts are markedly different than those in *Deicher v. City of Evansville* (7th Cir. 2008) 545 F.3d 537, Sanchez, Sr.'s principal authority. In *Deicher*, the plaintiffs

---

[19] Sanchez, Sr., tells us that the jury asked for exhibit 147, but he does not provide a record reference. Sanchez, Sr., also tells us that exhibit 147 was Plaintiffs' "most significant exhibit," but he does not explain its alleged significance or any prejudice he suffered as a result of the half-day delay in providing the exhibit.

served a prefiling "[n]otice of [c]laim" on the defendant police department, informing the department that the plaintiffs intended to file a lawsuit, as required by the federal statute under which the plaintiffs ultimately sued. (*Id.* at p. 539.) During deliberations, the jury had a question regarding the date of the filing of the complaint. (*Id.* at p. 543.) The plaintiffs' attorney asked that the notice of claim, a properly admitted exhibit, also be provided to the jury, because providing the date of the complaint without also providing the date of the notice was prejudicial given the issue before the jury. (*Id.* at pp. 543-544.) Over the objection of the plaintiffs' attorney, the district court told the jury the date on which the complaint was filed, but refused to provide the admitted exhibit (the notice of claim) to the jury. (*Id.* at p. 544.) Emphasizing that there is no requirement that the district court allow the jury to view an exhibit during deliberations, the Seventh Circuit nonetheless reversed *based on the showing of prejudice to the plaintiffs* in providing the date of the complaint, but not the notice of claim. (*Id.* at p. 545.) Here, in contrast, the jury *was* provided exhibit 147 half a day after it requested the exhibit, and Sanchez, Sr., has not established any prejudice by the half-day delay.

Accordingly, the trial court did not abuse its discretion in denying a new trial based on the half day (or less) of deliberations during which the jury's request for exhibit 147 was being decided.

### iii. *Parties' Joint Trial Exhibit List*

In reliance on the parties' joint exhibit list, a copy of which is in the clerk's transcript, Sanchez, Sr., argues that the clerk did not keep an accurate record of the exhibits. According to Sanchez, Sr., there are a number of exhibits listed for which

25

admissibility was stipulated but no date of admission is noted.[20] However, just because the joint trial exhibit list does not reflect a date of admission does not mean a particular exhibit was not admitted into evidence.[21] Sanchez, Sr., has assumed (without record references) that certain exhibits were not admitted into evidence.

Moreover, as Sanchez, Sr., presents the issue, it is *not* whether trial court proceedings were irregular, but whether the trial court erred in not admitting into evidence certain exhibits. To succeed with this argument, Sanchez, Sr., would have to establish where in the record he moved to admit each of these exhibits; where in the record he demonstrated "[t]he substance, purpose, and relevance of [each exhibit] was made known to the court"; where in the record the trial court denied his motion as to each

---

[20] The joint exhibit list has six columns: the exhibit number; the party offering the exhibit; a description of the exhibit; the legal grounds for objecting to the exhibit; the date the exhibit is offered into evidence; and the date the exhibit is admitted into evidence. The first four columns are filled in by counsel prior to trial and attached to a form stipulation and order for return of trial exhibits. Sanchez, Sr.'s concern is that, in the fourth column (objections), there are many entries for which admissibility of Plaintiffs' exhibits is stipulated; yet, in the sixth column (date admitted), there are no dates listed for admission into evidence.

[21] In a related argument, Sanchez, Sr., contends that the clerk failed to provide the jury with "164 exhibits that the parties had stipulated to admit." This issue is among the many that we must resolve against Sanchez, Sr., because he has not provided a record on appeal that contains evidence of the clerk's alleged failure to have provided exhibits to the jury. (*Ballard*, *supra*, 41 Cal.3d at p. 574; *Hernandez*, *supra*, 78 Cal.App.4th at p. 502.) In any event, the trial court has discretion to permit all, some, or none of the exhibits into the jury room (see *Higgins v. L.A. Gas & Electric Co*. (1911) 159 Cal. 651, 655-657); and Sanchez, Sr., has not attempted to establish either the court's abuse of discretion or the requisite prejudice to him (see *People v. Lee* (1974) 38 Cal.App.3d 749, 759 [disappearance of physical evidence during deliberations, "although deplorable and alarming," did not deprive defendant of fair trial where defendant failed to demonstrate what value the lost exhibits would have been to the jury]).

26

exhibit; and how he was prejudiced by the denial of the motion as to each exhibit. (Evid. Code, § 354, subd. (a).)[22] Sanchez, Sr., has not attempted to meet, let alone met, his burdens in these regards.

> b. *On Appeal — Preparation of the Clerk's Transcript*

Sanchez, Sr., argues that during preparation of the clerk's transcript on appeal, the clerk of the superior court omitted certain documents, and "a substantial number of document[s] . . . were missing" from the trial court's files. However, Sanchez, Sr., has not demonstrated either prejudice or a miscarriage of justice. (Cal. Const., art. VI, § 13; Code Civ. Proc., § 475; *Pool v. City of Oakland* (1986) 42 Cal.3d 1051, 1069.) In particular, Sanchez, Sr., does not complain that he was unable to include any specific document in the record on appeal. To the contrary, Sanchez, Sr., ensured the preparation of a clerk's transcript, an augmented clerk's transcript, and a further augmentation following motion.

Additionally, if in fact Sanchez, Sr., believed that he had been unable to include certain documents in the clerk's transcript, he could have brought to our attention by way of motion the need to augment or correct the record on appeal. (Rule 8.155.) We will

---

22    "A verdict or finding shall not be set aside, nor shall the judgment or decision based thereon be reversed, by reason of the erroneous exclusion of evidence unless the court which passes upon the effect of the error or errors is of the opinion that the error or errors complained of resulted in a miscarriage of justice and it appears of record that:  [¶] (a) The substance, purpose, and relevance of the excluded evidence was made known to the court by the questions asked, an offer of proof, or by any other means; . . . ."  (Evid. Code, § 354.)

not consider the record-related issue raised in the first instance in an opening brief on the merits of an appeal.

c.  *At Trial — Application of the Proper Burden of Proof*

In Knaggs' declaration, he testified that the jury, "as a group, did not find that there was sufficient convincing evidence to rule in favor of [Plaintiffs]."[23]  From this statement, Sanchez, Sr., argues that the jury applied an incorrect standard of proof — i.e., the clear and convincing standard, rather than the preponderance of the evidence standard.  We disagree.

First, Knaggs did not say the jury applied the clear and convincing standard.  He said only that Plaintiffs did not present "sufficient convincing evidence" to rule in their favor; he did not mention the burden of proof or the phrase "clear and convincing."  Moreover, because Sanchez, Sr., has not told us what claims went to the jury or the burden of proof on such claims, he has forfeited consideration of this argument.  (Rule 8.204(a)(1)(B); *Cairns*, *supra*, 188 Cal.App.4th at p. 949.)  Finally, because Sanchez, Sr., has not provided a record on appeal that contains the jury instructions actually given, we must disregard his presentation of the jury instructions the court allegedly gave and, accordingly, resolve any issue based on the instructions against him.  (Rule 8.204(e)(2)(C); *Ballard*, *supra*, 41 Cal.3d at p. 574; *Hernandez*, *supra*, 78 Cal.App.4th at p. 502).

---

23    This testimony was admitted into evidence without objection.  We express no opinion whether it was admissible under Evidence Code section 1150, subdivision (a).

28

For these reasons, Sanchez, Sr., has not established any irregularities in the proceedings related to the burden of proof applied by the jury.

B.    *Sanchez, Sr., Has Not Established Reversible Error in the Dismissal <u>with Prejudice</u> of His Conversion Claim*

At the end of his opening brief, Sanchez, Sr., presents a one-paragraph argument entitled, "The Superior Court erred in entering judgment on the claim for conversion of cash proceeds from 97 lots in Colorado, when it had previously dismissed this claim without prejudice."  (Bolding and underscoring omitted.)  Within the one paragraph, Sanchez, Sr., refers to a claim for conversion, the court's finding that it did not have jurisdiction, the court's dismissal of the claim *without prejudice*, the proposed judgment's dismissal of the claim *with prejudice*, Sanchez, Sr.'s objection to the proposed judgment, and the final judgment dismissing the claim *with prejudice* — all without one record reference.

On our own, though not required (*Del Real*, *supra*, 95 Cal.App.4th at p. 768; *Annod Corp.*, *supra*, 100 Cal.App.4th at p. 1301), we searched the record and were able to find Sanchez, Sr.'s objections and the final judgment.  However, without a reference to the operative complaint,[24] the reporter's transcript, the order of dismissal or the clerk's

_____

24    Sanchez, Sr., tells us that the claim for conversion of the proceeds from the sale of the lots in Colorado is in the second action Plaintiffs filed, San Diego Superior Court, No. 37-2010-00103323-CU-FR-CTL.  We have reviewed the copy of this complaint in the clerk's transcript.  Although Plaintiffs alleged conversion of at least eight different assets, we do not see a reference to either proceeds from the sale of lots in Colorado or their conversion.

29

minutes on the date of the dismissal, we have no way of determining either the facts underlying the claim of conversion or the basis of the dismissal.

The judgment indicates the dismissals were the result of a motion for directed verdict.[25]  We review de novo the grant of a motion for directed verdict.  (*Brassinga v. City of Mountain View* (1998) 66 Cal.App.4th 195, 209.)  " 'A directed verdict may be granted, when, disregarding conflicting evidence, and indulging every legitimate inference which may be drawn from the evidence in favor of the party against whom the verdict is directed, it can be said that there is no evidence of sufficient substantiality to support a verdict in favor of such party, if such a verdict has been rendered.' "  (*Newing v. Cheatham* (1975) 15 Cal.3d 351, 358-359.)  Procedurally, the grant of a motion for directed verdict results in "an order directing entry of a verdict in [the moving party's] favor." (Code Civ. Proc., § 630, subd. (a).)  There is nothing in these authorities that suggests a dismissal following a directed verdict is *without prejudice* as a matter of law; and Sanchez, Sr., has not presented any such authority.

Sanchez, Sr., relies on *Gogri v. Jack in the Box, Inc.* (2008) 166 Cal.App.4th 255 (*Gogri*) for the proposition that, because an order of a court lacking subject matter

---

25    We note that Sanchez, Sr., lists as one of five issues on appeal:  "Did the Superior Court exceed its jurisdiction when it granted non suit [*sic*] against [Sanchez] on his claim pertaining to ownership of real property in Colorado?"  We suspect Sanchez, Sr., has confused a nonsuit with the actual directed verdict.  Regardless, because Sanchez, Sr., presents no argument or authority related to the jurisdiction of the court or to the grant of a nonsuit in his argument related to the Colorado property, Sanchez, Sr., has forfeited any right he may have had to appellate review of such an issue.  (Rule 8.204(a)(1)(B); *Cairns*, *supra*, 188 Cal.App.4th at p. 949.)

jurisdiction is void (*id.* at p. 261), any further action by the court is invalid. In *Gogri*, the plaintiff voluntarily dismissed his complaint without prejudice while the defendant's motion for summary judgment was pending. (*Id.* at p. 260.) At the defendant's request, the trial court vacated the dismissal and granted the defendant's motion for summary judgment. (*Ibid.*) On appeal, we held that, because the voluntary dismissal was timely filed, the court did not have jurisdiction to decide the motion for summary judgment. (*Id.* at p. 259.) *Gogri* has no application here. Sanchez, Sr., does not argue, and our review of the record does not indicate, that at the time the trial court granted Defendants' motion for directed verdict the court lacked jurisdiction to rule on the motion.[26]

Defendants tell us that the trial court "granted the motion with prejudice[.]" However, we hesitate to take any action based on that statement, because in his reply brief Sanchez, Sr., continues to assert that "[t]he parties disagree whether the dismissal was with or without prejudice." Once again, without a reporter's transcript or court minutes we cannot determine what the trial court did, let alone whether it was done properly, and thus must resolve the issue against Sanchez, Sr., as the appellant. (*Hernandez*, *supra*, 78 Cal.App.4th at p. 502.) Accordingly, given these authorities and the record Sanchez, Sr., has presented, we are unable to "correct[]" the judgment as Sanchez, Sr., requests.

---

[26] To the extent Sanchez, Sr., relies on *Gogri*, *supra*, 166 Cal.App.4th 255, to convince us that because the dismissal of the claim here is with prejudice no other court will have jurisdiction to hear the claim, such an argument is not a basis on which we may grant relief.

DISPOSITION

We dismiss the appeal by Advanced Medicine and Research Center, Inc., and otherwise affirm the judgments filed January 9, 2013.  Albert Sanchez, Jr.; Linda Schrader; Ed Sanchez; AMARC Enterprises, Inc.; Scaffold Solutions, Inc.; and Tina Gomez are entitled to recover their costs on appeal from Albert Sanchez, Sr., and Advanced Medicine and Research Center, Inc.  (Rule 8.278(a).)


IRION, J.

WE CONCUR:


McCONNELL, P. J.


AARON, J.